**SUN OIL COMPANY OF PENNSYLVANIA, Plaintiff-Appellant,**

v.

**FEDERAL ENERGY ADMINISTRATION and Frank G. Zarb, Administrator, FEA and N. Allen Anderson, Regional Administrator, Federal Energy Administration, Region V, Defendants-Appellees,**

and

**Oskey Gasoline and Oil Company, Intervenor-Appellee.**

No. 5-27.

Temporary Emergency Court of Appeals.

Argued Jan. 6, 1978.

Decided March 21, 1978.

Jon A. Baughman, Pepper, Hamilton & Scheetz, Philadelphia, Pa., with whom Amelia H. Boss, Philadelphia, Pa., of the same firm and David Bland, Barrow, Bland & Rehmet, Houston, Tex., and Dean H. Hasseman, Philadelphia, Pa., Sun Oil Co. of Pennsylvania, were on the brief for plaintiff-appellant.

John Hanson, Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen. and Dennis G. Linder, Marvin L. Coan, Washington, D. C., were on the brief for defendants-appellees.

Robert A. Schwartzbauer, Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., with whom George Eck, Minneapolis, Minn. of the same firm, was on the brief for intervenor-appellee.

Before HOFFMAN, INGRAHAM and GEWIN, JJ.

GEWIN, Judge:

This appeal follows a series of Federal Energy Administration (FEA) and district court orders arising from a request by Oskey Gasoline & Oil Co. (Oskey), the intervenor-appellee, for termination of its relationships with its base period suppliers and the assignment of new, permanent suppliers. We vacate the stay order below and remand the case for a determination of Sun's claims on the merits.

We briefly summarize the history of the case. On September 24, 1974, FEA Region V issued an order terminating Oskey's relationships with its base period suppliers (Farmland, OKC, and Century) on the basis that they were "unworkable." On September 26, 1974, Region V ordered Sun and other refiners to supply Oskey its base period allocation. Sun appealed from the September 26 order to the FEA Office of Exceptions and Appeals, which on February 20, 1975, invalidated the September 26 order. *Sun Oil Co. v. Oskey Gasoline and Oil Co.*, 2 CCH Fed.Energy Guidelines ¶ 80,535. Similar appeals filed by Texaco, Champlin, Mobil, Shell, and Union were granted. *Texaco, Inc. v. Oskey Gasoline and Oil Co.*, 2 CCH Fed.Energy Guidelines ¶ 80,564 (Apr. 8, 1975); *Shell Oil Co. v. Oskey Gasoline & Oil Co.*, 2 CCH Fed.Energy Guidelines ¶ 80,565 (Apr. 8, 1975). On February 28, 1975, Region V reestablished Farmland, OKC, and Century as Oskey's suppliers.

Oskey, now essentially back in its former position, filed an Application for Exception requesting a permanent assignment of new suppliers other than its base period suppliers. On April 9, 1975, FEA granted Oskey's Application for Exception in modified form. Oskey Gasoline and Oil Co., 2 CCH Fed.Energy Guidelines ¶ 83,114. Both Farmland and Sun, among others, were assigned to supply Oskey under a Region V order of April 30, 1975, pursuant to the April 9 decision.

Meanwhile, on March 11, 1975, Farmland filed an action in the United States District Court for the District of Kansas challenging the validity of FEA's February 20, 1975 order and seeking a stay of Region V's February 28, 1975 order under which Farmland was to supply Oskey some 6.77 million gallons of motor gasoline during 1975. On May 2, 1975, the Kansas court issued a temporary injunction restraining enforcement of FEA's order of February 20, 1975, and subsequent orders based thereon. *Farmland Industries, Inc. v. Goldstein*, Civ.No. 75–57–C2 (D.Kan. May 2, 1975). FEA decided not to appeal the Kansas court's decision and Region V rescinded its assignment orders of February 28 and April 30, 1975.

On June 19, 1975, FEA Region V issued a Notice of Temporary Assignment directing Sun to supply a portion of Oskey's base period allocation, setting forth a proposed permanent assignment order to Sun, and soliciting Sun's comments, pursuant to 10 C.F.R. § 205.33. On July 21, 1975, Sun filed written comments on the proposed permanent assignment order, contending that the proposed assignment would be improper because FEA was attempting to bind Sun to the decision in the Kansas litigation, although Sun was not a party to that action. On August 1, 1975, Region V issued an assignment order making permanent Sun's assignment to provide Oskey over 18 million gallons of motor gasoline per year. On October 14, 1975, the FEA Office of Exceptions and Appeals denied Sun's appeal from the August 1 order. 2 CCH Fed.Energy Guidelines ¶ 80,705.

On August 21, 1975, the present action was filed in the United States District Court for the Southern District of Texas. Sun contended that the August 1 order was not supported by substantial evidence and that the order violated due process. Oskey was permitted to intervene. On December 11, 1975, Sun filed a motion for judgment on the pleadings. After the Kansas court denied a motion by Oskey to join Sun as a party in the Kansas action,[1] Oskey, on December 10, 1976, moved the Texas court to transfer the Texas action to Kansas or, in the alternative, to stay the proceedings in Texas. In its Memorandum and Order of August 29, 1977, the Texas court denied Oskey's motion to transfer and granted Oskey's motion to stay, pending resolution of the Kansas action. The Texas court did not reach the merits of Sun's motion for judgment on the pleadings.

FEA and Oskey contend that the decision of the Texas court is not conclusive or final within the meaning of 28 U.S.C. § 1291.[2] Oskey points out that the Texas court has merely deferred Sun's motion pending the Kansas decision, and asserts that the case is pending on the Kansas court's docket, to be tried when it is reached on the court's calendar. After the Kansas court makes a final determination of the validity of the February 20, 1975 order, the argument goes, Sun may seek review of the August 1, 1975 order in the court below.

The problem with this argument is that no party to the Kansas action shows any interest in challenging the temporary injunction issued May 2, 1975. The assignment orders of February 28, 1975, and April

---

1. After this litigation commenced in Texas, Oskey, at the direction of the Texas court, sought to join Sun as a party in the Kansas action. The Kansas court concluded that joinder was not appropriate since the issues before it and the litigation pending in the Texas court "appear to be completely separate and independent." *Farmland Industries, Inc. v. Goldstein*, Civ.No. 75–57–C2 (D.Kan. Oct. 27, 1976), at 3 (A. 187). The Texas court, on the other hand, indicated that the Kansas litigation would be dispositive of Sun's suit in Texas, due to the interdependence of the FEA orders challenged. *Sun Oil Co. v. FEA*, Civ.No. 75–H–1458 (S.D. Tex. Aug. 27, 1977), at 4–5 (A. 227).

2. Our jurisdiction arises from section 211(b)(2) of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 (note), as incorporated in the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 754 (1975). Sun suggests that under section 211(b)(2), which gives this court "exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title . . .", finality is not as stringent a requirement as under 28 U.S.C. § 1291, which expressly refers

to *final* decisions of the district courts. Sun does not press the point strongly. The scope of review of this court under section 211(b)(2) is properly restrained by the same policy considerations that accrue to 28 U.S.C. § 1291 jurisprudence. As Justice Frankfurter has written:

> Finality as a condition of review is an historic characteristic of federal appellate procedure. It was written into the first Judiciary Act and has been departed from only when observance of it would practically defeat the right to any review at all. Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. [footnotes omitted]

*Cobbledick v. United States*, 309 U.S. 323, 324–25, 60 S.Ct. 540, 541, 84 L.Ed. 783, 785 (1940). We see no reason to depart from the finality requirement as developed under section 1291.

30, 1975, were withdrawn after the injunction issued. FEA did not appeal from the Kansas court's decision and has adopted it by conforming its August 1, 1975 assignment order to the injunction. Oskey is pleased with the August 1 assignment order (as is Farmland, we presume), and Sun is not a party to the Kansas action. The result is that the temporary injunction issued by the Kansas court has been in effect nearly three years.

We believe the Texas court's order staying the proceedings pending a determination by the Kansas court effectively terminated the action below. A number of courts of appeals have recognized that a stay of proceedings may have a terminal effect and have pragmatically addressed themselves to the problem. In *Hines v. D'Artois*, 531 F.2d 726 (5th Cir. 1976), where the district court order stayed a civil rights action until plaintiff initiated and completed an EEOC proceeding which might take from eighteen months to five years, the court treated the stay order as appealable under section 1291:

> A "practical" construction requires that when a plaintiff's action is effectively dead, the order which killed it must be viewed as final. Effective death should be understood to comprehend any extended state of suspended animation.

531 F.2d at 730.

The decision in *Hines* invoked the Supreme Court's command in *Cohen v. Beneficial Industry Loan Co.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528, 1536 (1949), that the requirement of finality is to be given a "practical rather than a technical construction." The *Hines* court also took note of the decisions in *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), and *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962), where a stay order in effect directing the parties to go to state court, institute an

action, and obtain a ruling on the state law was held appealable as a final order under 28 U.S.C. § 1291. The courts in *Amdur v. Lizars*, 372 F.2d 103, 105–06 (4th Cir. 1967), and *In re Grand Jury Proceedings*, 525 F.2d 151, 155 (3d Cir. 1975), similarly held appealable indefinite stays which had the practical effect of a dismissal of the proceedings. *See generally* Wright, Miller & Cooper, 15 Fed. Practice and Procedure § 3914, at 564. *See also Kelley v. Metropolitan County Board of Education*, 436 F.2d 856, 862 (6th Cir. 1970), *cert. denied* 409 U.S. 1001, 93 S.Ct. 322, 34 L.Ed.2d 262 (1972); *McSurely v. McClellan*, 138 U.S. App.D.C. 187, 194, 426 F.2d 664, 671 n. 47 (1970) ("There is undoubted appellate jurisdiction to review the grant of an indefinite stay in a civil proceeding.")

Neither of the cases cited by FEA is controlling. In *Rodgers v. United States Steel Corp.*, 508 F.2d 152, 159 (3d Cir. 1975), the stay was not appealable as a final order under section 1291 because it was by its terms tentative, the district court having made clear its intent to reconsider the stay in approximately six months. In any event, review was sought of collateral orders. We are not concerned with a collateral order in this case. In *Cotler v. Inter-County Orthopaedic Ass'n*, 526 F.2d 537, 540 (3d Cir. 1975), the stay did not finally dispose of the entire case, the court noting that "[t]he § 10(b) claim may be old and feeble at the end of the state court litigation, but it will not be dead." Even though the stay was determined to be non-appealable, mandamus issued to set the stay order aside.

■ Sun argues that the stay order as framed effectively disposes of the entire matter on the merits.[3] As we have noted, the Texas court did not reach the merits of Sun's motion for judgment on the pleadings. Nor do we believe that the court below has in any way determined the validity of the FEA assignment order of August 1, 1975. It is apparent that Sun has a

---

3. "[B]y stating that Sun's claims will be dismissed if the Kansas court makes the temporary injunction permanent, the court below has held that the application of the temporary injunction to Sun does not deny it due process of law."
Reply Brief for Appellant 6.

serious due process argument. Sun must prove the allegations relating to its due process claim in the district court and obtain a ruling there before seeking review in this court, which is not well equipped to conduct evidentiary hearings. *See United States v. State of Ohio*, 487 F.2d 936, 938 (Em.App.1973), *aff'd sub. nom. Fry v. United States*, 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975), *cert. denied* 421 U.S. 1014, 95 S.Ct. 2422, 44 L.Ed.2d 683. This disposition accords with our recent decision in *Allied Paper Inc. v. United Gas Pipe Line Co.*, 561 F.2d 821 (Em.App.1977), vacating a stay order and remanding for a determination whether the parties entered into a contract binding under federal law.

The stay order is vacated and the case is remanded to the district court with directions to take all appropriate action to expedite a hearing on the merits.

VACATED and REMANDED.