**SUN OIL COMPANY OF PENNSYLVANIA, Plaintiff,**

v.

**The SECRETARY OF the DEPARTMENT OF ENERGY, Defendant,**

**and**

**The Oskey Oil Company, Intervenor.**

**Civ. A. No. 75–H–1458.**

United States District Court,
S. D. Texas,
Houston Division.

March 30, 1979.

David C. Bland, Barrow, Bland & Rehmet, Houston, Tex., John J. Runzer, Pepper, Hamilton & Scheetz, Jon A. Baughman, Philadelphia, Pa., for plaintiff.

Asst. U. S. Atty. Helen M. Eversberg, Houston, Tex., V. Reagan Burch, Jr., Scott E. Rozzell, Baker & Botts, Houston, Tex., for intervenor Oskey Oil Co.

Thomas H. Kemp, Department of Energy, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER:

SINGLETON, Chief Judge.

This action is brought by Sun Oil Company of Pennsylvania (Sun) who seeks declaratory relief from an assignment order of the Federal Energy Administration (FEA)[1] directing Sun to supply gasoline and heating oil to Oskey Oil Company (Oskey).

It is Sun's contention that it was denied due process since the FEA's August 1, 1975, Assignment Order was based on the decision of a United States District Court in Kansas in a lawsuit to which Sun was not a party.

The somewhat tortured history of this case has been summarized on prior occasions by this court[2] and by the Temporary Emergency Court of Appeals[3] and does not bear repeating in detail here.

Pursuant to the Emergency Petroleum Act of 1973, 15 U.S.C. § 751 *et seq.*, Oskey, a wholesale purchaser-reseller, was being supplied by three oil companies. Oskey and its suppliers had a history of poor relations and in September, 1974, they requested the FEA to terminate their supplier-purchaser relationship and assign Oskey new suppliers. The FEA granted the request and assigned Sun and other oil companies to supply Oskey. Sun successfully appealed this assignment to the FEA Office of Exceptions and Appeals which reestablished Oskey's original suppliers, one of whom was Farmland Industries, Inc. (Farmland).

When Oskey and Farmland found themselves back where they started, Oskey appealed to the FEA Office of Exceptions and Appeals and Farmland filed suit against the FEA in a United States District Court in Kansas. The FEA Office of Exceptions and Appeals granted Oskey modified relief by assigning Farmland and Sun to supply Oskey. The Kansas court issued a temporary injunction on May 2, 1975, restraining, *inter alia*, enforcement of the FEA's order granting Sun's appeal. In granting Farmland's request for injunctive relief, the court found that Sun's appeal was procedurally defective and the FEA therefore exceeded its authority in presuming to

1. The Department of Energy succeeded to the functions and responsibilities of the FEA on October 1, 1977, and has been substituted as defendant in this action.

2. *Sun Oil Company of Pennsylvania v. Federal Energy Administration*, 440 F.Supp. 328 (S.D. Tex.1977).

3. *Sun Oil Company of Pennsylvania v. Federal Energy Administration*, 572 F.2d 867 (Temp. Emer.Ct.App.1978).

grant the appeal and in reestablishing Farmland as Oskey's supplier.[4] In addition, the court enjoined enforcement of any subsequent orders flowing from the granting of Sun's appeal, including the relief granted Oskey by the Office of Exceptions and Appeals.

On June 19, 1975, the FEA issued a Notice of Temporary Assignment and Proposed Permanent Assignment by which Sun was assigned to supply Oskey. This Notice sets out the history of judicial and administrative orders concerning the case to that date and is the basis for the August 1, 1975, permanent assignment order which is the subject of this litigation.

It is clear from this notice that the FEA sought to resolve all issues concerning this matter through adoption of the Kansas court's decision.

> [The] . . . FEA has decided not to appeal the court's decision and has decided instead to adopt the court's opinion as controlling with respect to all FEA orders affected thereby and *all persons* subject to said orders . . . . .

Notice of Temporary Assignment, June 19, 1975 (emphasis added).[5] Sun is clearly a person affected by the FEA orders found invalid by the Kansas court. Sun is just as clearly not a party to the Kansas suit[6] which is the basis for the FEA's August 1, 1975, assignment of Sun to supply Oskey.

Prior to the issuance of the August 1, 1975, order, Sun submitted comments to the FEA contending it was violative of Sun's right to due process to bind Sun to the Kansas decision when it was not a party to that litigation. Sun appealed the August 1, 1975, assignment order and the FEA Office of Exceptions and Appeals denied Sun's appeal.

The evidence presented in this case, mainly in the form of the various FEA orders, especially the June 19, 1975, Temporary Assignment Order, leads this court to the conclusion that Sun was denied due process by the FEA in that Sun was assigned to supply Oskey on the basis of the Kansas decision to which Sun was not a party. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

The August 1, 1975, assignment order cannot stand. By invalidating that order, this court does not presume to resolve the underlying problem of who should supply Oskey. The Department of Energy (DOE) has that responsibility and is equipped with the authority and means of implementation to assure that Oskey will be adequately supplied.

The Kansas action is still pending and the DOE can seek a final resolution there. In the interim, companies other than Sun are assigned to supply Oskey and those assignments have not been challenged. Finally, the DOE has available the use of exception relief under its regulations which it can and has used in this matter. This court finds the DOE is the proper place to determine Oskey's suppliers in a manner which affords due process to the parties involved.

Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED that the Federal Energy Administration's order of August 1, 1975, is INVALID; it is further ORDERED that this case be remanded to the Department of Energy for action consistent with this opinion.

APPENDIX "A"

BEFORE THE FEDERAL ENERGY ADMINISTRATION

IN RE: SUPPLY OF OSKEY GASOLINE AND OIL COMPANY

NOTICE OF TEMPORARY ASSIGNMENT
AND PROPOSED PERMANENT ASSIGNMENT

I. *Introduction*

This Notice is being issued to all persons readily identifiable to the Federal Energy

---

**4.** *Farmland Industries, Inc. v. Goldstein*, No. 75–57–C2, slip op. at 1–2 (D.Kan. May 2, 1975).

**5.** Appendix "A."

**6.** The Kansas court denied Oskey's motion to join Sun as a party. *Farmland Industries, Inc. v. Goldstein*, No. 75–57–C2 (D.Kan. Oct. 27, 1976).

Administration (FEA) as persons which will be affected by the temporary and proposed permanent assignment orders attached hereto. It is intended to fulfill the notice requirements of 10 C.F.R. § 205.33 with respect to such assignments. The assignment orders attached hereto are being proposed in response to various past and present applications for assignments of suppliers by the Oskey Gasoline and Oil Company (Oskey) as well as in response to a complicated series of administrative and judicial actions which have cast considerable uncertainty over the validity and the viability of the supplier/purchaser relationships existing between Oskey and its suppliers.

Most of the factual background against which these assignment orders are being proposed is set forth in detail in the Exception Decision and Order issued on April 9, 1975 by FEA's Office of Exceptions and Appeals, Washington, D.C., granting Oskey's request for exception administrative relief. Oskey Gasoline and Oil Co., II C.C. H.Fed.Energy Guidelines, P83,114 (April 9, 1975). Many of the facts contained in that decision are repeated here in an abbreviated form for the convenience of those persons who may be affected by the proposed assignment orders.

Oskey is a nonbranded wholesale purchaser-reseller of gasoline, No. 2 heating oil and diesel fuel, as defined in § 211.51, and is a reseller as defined in § 212.31 of the FEA regulations. Oskey markets its products in eleven mid-continent states, supplying those products to approximately 400 independent wholesale purchaser-resellers and wholesale purchaser-consumers. Oskey does not own substantial inventory storage facilities and lacks an extensive transportation or distribution system. Oskey receives products through the facilities of the Williams and Kaneb Pipelines and arranges for the sale and distribution of its products from those pipeline facilities.

As a wholesale purchaser-reseller, Oskey is subject to the provisions of Part 211 of the Mandatory Petroleum Allocation Regulations. Under the provisions of Part 211, base period supplier/purchaser relationships for gasoline and No. 2 heating oil are generally required to be maintained. The base period for both of those products is the month of 1972 corresponding to the current month.

During 1972, the majority of Oskey's gasoline and No. 2 heating oil was supplied by three principal suppliers—Farmland Industries ("Farmland"), OKC Corporation ("OKC"), and Century Refining Company ("Century").

During 1974, Oskey received from its base period suppliers volumes of product which were substantially less than it received in 1972, at prices which were, for the most part, higher than the prices charged for gasoline and No. 2 heating oil by Oskey's principal competitors. Part of Oskey's supply problems stemmed from a history of poor business relations between Oskey and two of its three principal suppliers, Farmland and OKC, which had developed prior to the FEA's Mandatory Allocation Program. Both Farmland and OKC were supplying Oskey only under protest. In addition, Century was unable to supply Oskey its full base period allocation because of cutbacks in Century's own supply.

## II. Administrative Proceedings

On September 24, 1974, the FEA Acting Regional Administrator, Region V, consented to the termination of the base period supplier/purchaser relationships between Oskey and Farmland, OKC and Century, finding them "unworkable". And on September 26, 1974 and October 2, 1974, the Acting Regional Administrator, Region V, issued orders to Champlin Petroleum Company ("Champlin"), Mobil Oil Corporation ("Mobil"), Shell Oil Company ("Shell"), Sun Oil Company ("Sun"), Union Oil Company ("Union"), and Texaco, Incorporated ("Texaco"), assigning those firms to supply Oskey's adjusted base period allocation for gasoline and No. 2 heating oil on a permanent basis.

All six of the new suppliers appealed the assignment orders issued to them.

On February 20, 1975, the FEA Office of Exceptions and Appeals, Washington, D.C.,

granted Sun's appeal from the September 26, 1974 assignment order. This appeal was granted on the grounds that the September 24, 1974 order of the Regional Administrator, Region V, terminating the base period supplier/purchaser relationships between Oskey and Farmland, OKC and Century, and the September 26, 1974 assignment order to Sun were not valid orders since they were not based on a finding that Oskey's base period suppliers were "unable" to supply Oskey, as § 211.12(e)(3) of the FEA regulations. The Office of Exceptions and Appeals, therefore, vacated the assignment order to Sun and remanded the matter to the Regional Administrator, Region V, with instructions to establish the supplier/purchaser relationships between Oskey and Farmland, OKC, and Century on or before March 1, 1975, and to require Oskey's base period suppliers to supply Oskey the amounts previously supplied by Sun. See *Sun Oil Company (v. Oskey Gasoline and Oil Co.),* II C.C.H.Fed. Energy Guidelines, P20,251 (February 20, 1975). These instructions were carried out by the Regional Administrator on February 28, 1975, in orders to Farmland, OKC and Century. An appeal identical to the Sun appeal was later granted to Texaco. *Texaco, Inc. v. Oskey Gasoline and Oil Company,* II C.C.H.Fed. Energy Guidelines, P80,564 (April 8, 1975). And based upon the precedent established in *Sun* and *Texaco, supra,* the Office of Exceptions and Appeals also granted the appeals filed by Champlin, Mobil, Shell, and Union, fully reestablishing Farmland, OKC, and Century as the base period suppliers of Oskey. *Shell Oil Co., Union Oil Co., Champlin Petroleum Co. and Mobil Oil Corp. v. Oskey Gasoline and Oil Co.,* II C.C.H.Fed. Energy Guidelines, P80,565 (April 8, 1975).

On February 27, 1975, in light of the appeal granted to Sun and the likelihood that the Office of Exceptions and Appeals would grant the appeals of the other new suppliers, Oskey filed an Application for Exception requesting a permanent assignment of new suppliers other than Oskey's base suppliers. Oskey's exception request was based on the allegations that Oskey was unable to obtain sufficient supplies of gasoline, and No. 2 heating oil from its base period suppliers at a price that would enable it to meet its competition; that Oskey had suffered substantial reductions in its gross profit margins and operating and net profitability as a result of its reliance on its base period suppliers; and that Oskey was unable to meet the credit terms currently required by two of Oskey's base period suppliers, Farmland and OKC.

On March 6, 1975, a conference was held in Washington, D.C. to consider Oskey's exception request. It was attended by representatives from FEA, Oskey, Farmland, OKC, Century, Champlin, Mobil, Shell, Sun and Union.

On April 9, 1975, one day after the appeals had been granted to Champlin, Mobil, Shell, Sun, Texaco and Union, and the supplier/purchaser relationships between Oskey and Farmland, OKC and Century had been fully reestablished, the Office of Exceptions and Appeals granted, in modified form, Oskey's exception request. See *Oskey Gasoline and Oil Company, supra.* The Exception Decision and Order stayed the effect of the aforementioned appeals decisions and ordered the Regional Administrator, Region V, to issue new assignment orders by no later than April 30, 1975, in accordance with the following specific instructions:

Notwithstanding any contrary provisions of 10 C.F.R., Part 205 or Part 211, the Regional Administrator of the FEA, Region V, shall take all necessary steps so as to assign to Oskey a permanent supplier or suppliers whose wholesale prices ex pipeline terminal for gasoline and No. 2 heating oil are below the average of the rack selling prices currently charged for those products in Oskey's marketing area by Oskey's principal competitors. The assigned supplier(s) shall provide Oskey with quantities of gasoline equivalent to the aggregate of the adjusted base period volumes of that product supplied by OKC to Oskey and 60 percent of the adjusted base period volumes of that product supplied by both Farmland and Century to Oskey. The assigned supplier(s) shall

provide Oskey with quantities of No. 2 heating oil equivalent to the aggregate of the adjusted base period volumes of that product supplied by OKC to Oskey and 70 percent of the adjusted base period volumes of that product supplied by Farmland to Oskey. Any assignment orders issued by the Regional Administrator shall specify the maximum credit terms which may be required of Oskey by the new supplier(s). Any such assignment order(s) shall contain a payback provision entitling the new supplier(s) to purchase equivalent amounts of product to that assigned from Farmland, OKC and Century.

The stay of the appeals was to expire automatically upon the issuance of the new assignment orders required by the Oskey Exception Decision and Order.

On April 30, 1975, in accordance with the Oskey Exception Decision and Order, the Regional Administrator, Region V, issued new assignment orders to Century, Farmland, Champlin, Skelly Oil Corporation ("Skelly"), Sun, and Texaco to supply Oskey its adjusted base period allocation for gasoline and No. 2 heating oil.

### III. *Judicial Proceedings*

In the midst of these actions taken by FEA, Farmland filed a Petition for Review in the Federal District Court for the District of Kansas, challenging the February 20, 1975 order of the Office of Exceptions and Appeals, that had granted Sun's appeal and had reestablished the base period supplier/purchaser relationships between Oskey and Farmland. Farmland sought a judicial stay of enforcement of that Order and of the February 28, 1975 Order of the Regional Administration of Region V requiring Farmland to supply Oskey a portion of the volume of motor gasoline previously assigned to Sun.

On April 21, 1975, Farmland amended its Petition for Review to challenge and seek to stay the directives contained in the April 8, 1975 Appeals Decisions and Orders and the April 9, 1975 Oskey Exception Decision and Order, both of which had been issued by the Office of Exceptions and Appeals.

The amended Petition for Review also sought a stay against issuance of any new assignment orders to Farmland by the Regional Administrator, Region V, in conformity with the Oskey Exception Decision and Order.

On May 2, 1975, the court granted Farmland's request for injunctive relief, holding as follows:

The Court finds that plaintiff has met its burden of proving a substantial likelihood that the Order of the Federal Energy Administration, Office of Exceptions and Appeals, Washington, D.C. of February 20, 1975, was in excess of the agency's authority and jurisdiction and not in compliance with the applicable rules and regulations of the Federal Energy Administration, in that it appears that the directive of September 24, 1974, was an Order that was not appealed by any of the affected parties thereto and became final; that Sun's attempted appeal from the subsequent Assignment Order of September 26, 1974, was neither timely nor filed in the proper office of the Federal Energy Administration; and that the Federal Energy Administration, Office of Exceptions and Appeals, accordingly exceeded its authority in reestablishing the base period supplier/purchaser relationship between Oskey and Farmland. The Court further finds that the subsequent Orders of the Federal Energy Administration, Office of Exceptions and Appeals, Washington, D.C., and the Region V Administrator complained of in this action are each based upon the findings and the Order of February 20, 1975, above referred to and would likewise be invalid should their foundation fall. Slip. Op. (*Farmland Industries, Inc. v. Melvin Goldstein*, et al., Case No. 75–57–C2, D.Kan., May 2, 1975, pp. 1–2)

The Court also found:

The Federal Energy Administration, Region V, has the authority to assign other suppliers of petroleum products for the benefit of defendant Oskey during such time as this Order remains in effect, and the Court urges said defendant to take such appropriate action. (Ibid. p. 2)

Accordingly, on May 19, 1975, FEA issued a temporary assignment order to Gulf Oil Corporation requiring Gulf to supply the volume of gasoline previously required to be supplied by Farmland. This order expires automatically within 60 days by its own terms and pursuant to § 205.39(a) of the regulations. Oskey, however, has not purchased any product from Gulf pursuant to this temporary order because of a dispute over the appropriate class of purchaser designation for determining Gulf's price to Oskey.

In addition to the Farmland suit, on February 28, 1974, Mobil Oil Company had filed suit in the United States District Court for the Northern District of Illinois, requesting the Court to stay enforcement of a remedial order issued by FEA to Mobil with respect to the price Mobil was charging Oskey for No. 2 heating oil pursuant to the September 26, 1974 assignment order. This dispute was subsequently settled, but Mobil amended its complaint on March 10, 1975 to challenge the validity of the September 26, 1974 assignment order. And on May 2, 1975, Mobil again amended its complaint in order to seek an injunction against the April 30, 1975 assignment order issued by FEA, Region V, pursuant to the Exception Decision and Order of April 9, 1975. Mobil's challenges to said assignment orders were based principally on alleged due process violations. On May 6, 1975, the district court denied Mobil's request for a preliminary injunction; however, Mobil's amended and second amended complaints are still awaiting a final adjudication on the merits.

IV. *Issuance of Temporary and Proposed Permanent Assignment Orders*

In view of the district court's reasoning in *Farmland v. Goldstein*, supra, upholding the validity of the September 24, 1974 order terminating Oskey's base period supplier/purchaser relationships with OKC, Farmland and Century, and invalidating the subsequent February 20, April 8, and April 9, 1975 orders of the FEA Office of Exceptions and Appeals pursuant to which Oskey's base period supplier/purchaser relationships were partially restored and new suppliers were assigned to supply the remainder of Oskey's allocable supply, FEA has decided not to appeal the court's decision and has decided instead to adopt the court's opinion as controlling with respect to all FEA orders affected thereby and all persons subject to said orders, including the April 30, 1975 assignment orders. Accordingly, FEA, Region V, hereby rescinds the April 30, 1975 assignment orders to supply Oskey and finds that Oskey currently does not have valid base period suppliers within the meaning of § 211.12(e)(3) of the regulations. It has therefore become necessary to issue temporary assignment orders and to propose permanent assignment orders to insure Oskey the supply of product to which it is entitled under the Mandatory Petroleum Allocation Program.

Pursuant to § 205.39(a) of the regulations, FEA has decided to waive the requirement in § 205.34 with respect to the filing of an "Application for Assignment" by Oskey. Virtually all of the information required by § 205.34(b) to be filed by an applicant for an assigned supplier has been set forth elsewhere in the published opinions of the FEA and the courts in deciding the administrative and judicial appeals stemming from Oskey's previous applications for an assignment of suppliers and Oskey's request for an exception. No purpose would be served, therefore, in requiring Oskey to refile its application, and no person will be prejudiced by FEA's waiver of this requirement.

The attached orders are being issued and proposed without regard to a supplier's relative cost of product. However, in view of the previous difficulties which Oskey has experienced in obtaining reliable supplies under appropriate credit terms and pursuant to the appropriate class of purchaser designation for pricing purposes, FEA has carefully defined the terms pursuant to which sales to Oskey shall be made. These terms are no more or less stringent than are customarily required of all suppliers who supply product pursuant to the Mandatory Petroleum Allocation Program.

The Temporary Assignment Order attached hereto shall be effective immediately upon issuance and shall expire automatically within 60 days, pursuant to § 205.-39(a).

You are invited to submit in writing any pertinent data, views or arguments which you have with respect to the attached proposed permanent orders assigning you to supply Oskey such data, views or arguments should be submitted to N. Allen Andersen, Regional Administrator, Federal Energy Administration, Region V, 175 West Jackson, Chicago, Illinois 60604. All comments and all relevant information received by July 20, 1975 will be considered before final action is taken on the proposed permanent assignment orders attached hereto.

Dated 6/19/75

/S/ <u>N. Allen Andersen</u>
N. Allen Andersen
Regional Administrator