MGPC, INC., a Wyoming corporation, Plaintiff-Appellee,

v.

DEPARTMENT OF ENERGY, et al., Defendants-Appellants.

No. 10–33.

Temporary Emergency Court of Appeals.

Argued Sept. 18, 1981.

Decided Feb. 17, 1982.

Don W. Crockett, Washington, D. C., argued; with him on the brief were Thomas S. Martin, Acting Asst. Atty. Gen., Civil Division, Dept. of Justice, and Courtney Price, Dept. of Energy, Washington, D. C., Richard T. Williams, Los Angeles, Cal., for defendants-appellants, Dept. of Energy, et al.

Richard F. Ahern, Kadison, Pfaelzer, Woodard, Quinn & Rossi, and Don G. Kircher, Franklin D. Dodge, Los Angeles, Cal., and Hathaway, Speight & Kunz, Jack B. Speight, Cheyenne, Wyo., for plaintiff-appellee, MGPC, Inc.

Before DUNIWAY, SPEARS, and WEIGEL, Judges.

DUNIWAY, Judge:

The Department of Energy appeals from an order by the district court styled a preliminary injunction. We find that the order is appealable as a final order, and we reverse. In the alternative, we find that the district court acted beyond its jurisdiction, and we order that a writ of mandamus issue. We vacate the order of the district court and direct that the action be dismissed with prejudice.

## I. *Facts.*

MGPC, Inc., the plaintiff, was formerly named McCulloch Gas Processing Corporation. Apparently, before this action was filed, it yielded to the current mania for acronyms, and changed its name. In any event, its previous name described its business. It receives natural gas and processes it, some of the products being the same as some of the products of petroleum.

Since price controls were imposed upon petroleum products, the Department of Energy and its predecessor agencies have been trying to develop and refine regulations that deal with the special case of gas processors, and to apply these regulations to MGPC. The Cost of Living Council, on August 19, 1973, promulgated Phase IV pricing regulations, 6 C.F.R. Part 150, Subpart "L," 38 Fed.Reg. 22536 (Aug. 22, 1973). The Federal Energy Office, successor to the Cost of Living Council, republished the pricing regulations, 10 C.F.R. Part 212, Subpart "E," on January 15, 1974. Both regulations dealt with "refiners," but also were made applicable to gas processors. However, they were "not well suited" to them. *See* 39 Fed.Reg. 32719 (Sept. 10, 1974). *See also Twin City Barge & Towing Corp. v. Schlesinger,* Em.App., 1979, 603 F.2d 197, 200. On December 24, 1974, new regulations, specifically applicable to gas processors, were issued, as Subpart "K" of 10 C.F.R. Part 212. Later, on May 29, 1975, the Federal Energy Administration published ruling 1975–6, 40 Fed.Reg. 23272 (May 29, 1975), and formulae for computing "increased product costs" were promulgated December 2, 1975, FEA Ruling 1975–18, 40 Fed.Reg. 55860. *See also* FEA's Class Exception (2 FEA ¶ 84,-901) requiring gas producers to apply certain parts of Subpart "K" retroactively to August 19, 1973; *and see McCulloch Gas Processing Corp. v. Dep't of Energy,* Em. App., 1981, 650 F.2d 1216.

This case concerns, to a limited extent, the validity of MGPC's pricing for the period August, 1973 to February, 1975. There have been five audits by the Department and its predecessors of MGPC's pricing during that period. On the basis of the last one, the Department issued a Notice of Probable Violation by MGPC in January, 1978. This is the first step in the enforcement proceeding authorized in 42 U.S.C. § 7193. In January, 1979, the Department issued a Proposed Remedial Order. (See 42 U.S.C. § 7193(a).) It alleged overcharges by MGPC of approximately $3,773,000.00. In December, 1980, the Department's Office of Enforcement moved to amend the proposed order by reducing the charged amount of overcharges to $2,200,000.00.

As required by 42 U.S.C. § 7193(c), MGPC filed objections to the proposed remedial order in February, 1979. As required in subsection (c), MGPC also asked for an evidentiary hearing on nine issues and filed a discovery motion, seeking to submit 42 interrogatories, and seeking to depose some 65 part or present Department employees. The Office of Hearings and Appeals (OHA) waived certain technical irregularities in the request for an evidentiary hearing but, nevertheless, found it improper as to six of the nine issues, because those issues involved either questions of law or else did not require live testimony. A hearing was scheduled for August 26, 1980, on the remaining three issues, and then rescheduled for October 7, 1980, by agreement of the parties and at the request of MGPC. The OHA refused to allow MGPC to call Departmental personnel as witnesses. It granted MGPC's request for its auditors' work papers but refused to allow the discovery of other documents requested, including "all documents generated by the DOE and its predecessors construing" some twenty-one words and phrases as to which MGPC claimed that agency usage was not the same as industry usage or that there has been inconsistent agency interpretation. OHA said that no specific instances of inconsistent interpretation has been given and that industry usage could not be determined from Departmental files. OHA refused to allow the requested depositions on the ground that MGPC had failed to show that they would lead to admissible evidence, and it sustained objections to all but 12 of the proposed 42 interrogatories. The 12 interrogatories were answered.

Eight days before the rescheduled hearing, MGPC moved that OHA reconsider its rulings and for a stay of the hearing in the interim. Four days before the hearing date it filed this action in the district court for the District of Wyoming and won a temporary stay. Since then there has been a series of four more temporary restraining orders, and, finally, the "preliminary injunction," from which the appeal is taken. The agency process has been frozen at its present status since October, 1980.

## II. *The Decision of the Trial Court.*

The district court's order prohibits OHA from conducting its hearings pending further order of the court, prohibits it from penalizing MGPC for not attending the hearing, prohibits the enforcement of OHA's previous orders concerning the hearings or any other matters, and orders further "that the Secretary of Energy shall promptly appoint an independent administrative law judge for the sole purpose of supervising such further documentary and deposition discovery as the administrative law judge determines is appropriate and reasonable to develop fully all facts relevant to the claims of either the Plaintiff or Defendants in [the present case] and related cases, and to preserve for disposition on the merits of the matter such testimony and evidence, both orally and documentary. All discovery shall be completed by May 1, 1981. Counsel in the case shall co-ordinate their discovery efforts and shall utilize personnel of the Defendants so that the on-going administrative proceedings are not hampered by the discovery proceedings. The Court defines an independent administrative law judge as one who is not and has not been an officer or employee of the Department of Energy or any of its predecessor agencies, and is engaged in administrative law work for some other branch of the federal government." ·

The district court chose not to use the authority given it by 12 U.S.C. § 1904 note section 211(c) to certify the question to this court as a substantial constitutional issue.

There has been no decision by OHA on the merits of the Proposed Remedial Order.

The only decisions have been on preliminary matters which OHA is clearly entitled to decide under 42 U.S.C. § 7193(c), which provides: "The Commission shall, upon request, afford an opportunity for a hearing, including, at a minimum, the submission of briefs, oral or documentary evidence, and oral arguments. To the extent that the Commission in its discretion determines that such is required for a full and true disclosure of the facts, the Commission shall afford the right of cross examination." (The OHA acts for the Commission in these matters.) Thus, MGPC has persuaded the district judge to enjoin further proceedings by OHA at the preliminary stages of the administrative proceedings by ordering the appointment of an "independent" Administrative Law Judge and directing that Judge as to what he/she is to do. On the other hand, the district judge disclaims any desire or intention to decide the merits of the case before OHA. We emphasize that the validity of the charge of possible violation by MGPC was not before the district court; a fortiori, it is not before us.

## III. *Our Jurisdiction on Appeal.*

### A. *Subject Matter.*

■ We have a special and limited jurisdiction. This was originally defined in § 211(b)(2) of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note, which provides in relevant part:

Except as otherwise provided in this section, the Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder.

We may review agency actions taken under the Emergency Petroleum Allocation Act, 15 U.S.C. §§ 751 *et seq.*, because that power is granted by § 754(a)(1) of that Act. The Department of Energy was created in 1977 by the Department of Energy Organization Act, 42 U.S.C. §§ 7101 *et seq.* We retain jurisdiction over actions of the Department that were authorized by the earlier Acts but are now within its power. 42 U.S.C. § 7192(a). *See generally Texaco,*

*Inc. v. Department of Energy*, Em.App., 1979, 616 F.2d 1193, 1196. To decide whether or not we have jurisdiction to hear an appeal, we look to the nature of the issue that is presented to us and not to the nature of the case or controversy presented below. *Gulf Oil Corp. v. Department of Energy*, Em.App., 1981, 639 F.2d 766, 767.

With respect to the subject matter thus defined, and except for a restriction not here relevant, we have the full powers of a circuit court of appeals. 12 U.S.C. § 1904 note, § 211(b)(1). This power includes the power to resolve those subsidiary, procedural and threshold questions—such as mootness, standing and ripeness—that are incidental to questions that are within our jurisdiction, because the power to do so is normal and necessary to the functioning of any appellate court. *Quincy Oil, Inc. v. Federal Energy Administration*, Em.App., 1980, 620 F.2d 890, 893. *See also Department of Energy v. Crocker*, Em.App., 1980, 629 F.2d 1341 (*per curiam*).

■ We now apply these established principles to the facts of this case. The questions that are presented to us for review arise from the action of the district court in interfering with the administrative process of the Department of Energy in its attempt to enforce regulations issued under the authority of the Emergency Petroleum Allocation Act. Clearly, we would have subject matter jurisdiction of the judgment of a district court overturning a final order of the Department enforcing those regulations. Here, the order of the district court is an approval of a broad challenge to the powers of the Department to run its enforcement proceedings in accordance with the rules which it has laid down under the authority of the three Acts previously mentioned. We have jurisdiction to consider this challenge to those procedural regulations.

We would have regarded these conclusions as too obvious to require discussion were it not for our decision in *Gulf Oil Corp. v. Department of Energy, supra. Gulf Oil* was an extraordinary case. There were allegations from within the agency of document destruction and prohibited *ex parte* communications, and admissions that these things had occurred. The agency had restricted discovery about those matters. In these extreme circumstances the district court made a very narrowly restricted order for the appointment of an independent Administrative Law Judge for the sole purpose of supervising such further document or deposition discovery as that judge determined was appropriate and reasonable to develop fully all facts concerning the *ex parte* communications and document destruction. We found that we had no jurisdiction to consider an appeal of that order. No question involved arose under the statutes that are our concern. The issues involved were not subsidiary, procedural or threshold issues, but solely questions of possible flagrant misconduct by an administrative agency. The appeal was heard by the Court of Appeals for the District of Columbia. *Gulf Oil Corp. v. Department of Energy*, D.C.Cir., 1981, 663 F.2d 296.

The order issued by the district court in the present case is very different. The case is one in which judicial interference with the normal administrative process in a proceeding dealing with issues of which we would have subject matter jurisdiction on appeal has been thinly disguised to make it look like *Gulf Oil*. That case is not in point in this case. We have subject matter jurisdiction.

B. *Appealability.*

■ We have jurisdiction to hear appeals from final orders. 12 U.S.C. § 1904 note section 211(b)(2). We also have jurisdiction to hear appeals from interlocutory orders if these are certified to us by the district court as provided in 28 U.S.C. § 1292(b). 12 U.S.C. § 1904 note section 211(d)(2). We do not have jurisdiction to hear appeals from interlocutory decisions when there has been no such certification because that jurisdiction is not expressly given to us by any statute. *E.g., Exxon Corp. v. Federal Energy Administration*, Em.App., 1975, 516 F.2d 1397. There has been no certification in the present case.

To decide whether or not a particular order is appealable as a final order we have looked to cases that construe the finality requirement of 28 U.S.C. § 1291. *Sun Oil Co. v. Federal Energy Administration*, Em. App., 1978, 572 F.2d 867, 869 n.2. Section 1291 is to be given "a practical rather than a technical construction." *Firestone Tire & Rubber Co. v. Risjord*, 1981, 449 U.S. 368, 375, 101 S.Ct. 669, 674, 66 L.Ed.2d 571; *Gillespie v. U.S. Steel Corp.*, 1964, 379 U.S. 148, 152, 85 S.Ct. 308, 310, 13 L.Ed.2d 199; *Sun Oil Co., supra.* We hold that under this test the order of the district court is appealable as a final order.

In the first place, the order gives MGPC substantially everything that it asked for in the district court. It asked for, and got, a complete stay of the pending agency enforcement proceeding. In addition it asked, expressly in the alternative, for four types of relief: (1) a termination of the Department's enforcement proceedings, or (2) an enforcement proceeding in the district court, rather than in the agency, or (3) immediate transfer of the enforcement proceeding to the Federal Energy Regulatory Commission, or (4) the appointment of an Administrative Law Judge, not connected with the agency, to conduct further matters involving MGPC. It also asked for certain discovery and a trial type hearing. There was also a request for, in substance, a termination of the agency enforcement proceedings. The court granted the stay, granted the fourth alternative type of relief, and denied any permanent disposition of the enforcement proceedings. Thus, in essence, the court granted all of the requested relief, except termination of the proceedings within the agency. Before us, MGPC does not claim that the last mentioned ruling was error. On the contrary, both MGPC and the trial judge disclaim any intention to interfere with the agency's proceeding except in relation to discovery, and by the requirement that an "independent" Administrative Law Judge be appointed to conduct and supervise discovery. Thus, MGPC has achieved everything that it now says that it wants and that the trial judge says that it is entitled to. In essence,

though not in form, the "preliminary injunction" is a final order. As such, it is appealable under 28 U.S.C. § 1291.

In the second place, the order is one like that in *Cohen v. Beneficial Loan Corp.*, 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528. There, the Court held that orders that "fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated" (p. 546, 69 S.Ct. p. 1225), are appealable as final orders. The order before us is of this type. If it is carried out, when discovery is complete, the action will have served its purpose, and further proceedings will be before the agency, first its Office of Hearings and Appeals, then the Federal Energy Regulatory Commission, then in a different proceeding, the District Court, and then, on appeal, this court. Review, if any, of the district court's order that is now before us, will be tangential at best, and probably moot. Thus, if the order is to be reviewed at all, it must be reviewed now. The *Cohen* principle is fully applicable. *See Marine Petroleum Co. v. Champlin Petroleum Co.*, Em.App., 1980, 657 F.2d 1231, 1239–1242. *See also Paluso v. Mathews*, 10 Cir., 1980, 573 F.2d 4, 7–8; *Wescott v. Impresas Armadoras, S.A. Panama*, 9 Cir., 1977, 546 F.2d 875, 879–881; *In re Nissan Motor Corp. Antitrust Litigation*, 5 Cir., 1977, 552 F.2d 1088, 1094–1096; *Morales v. Turman*, 5 Cir., 1976, 535 F.2d 864, 867 n.6, *rev'd on other grounds*, 1977, 430 U.S. 322, 324, 97 S.Ct. 1189, 1190, 51 L.Ed.2d 368 (expressly upholding the court of appeals on the jurisdictional question).

### IV. *Mandamus.*

In the alternative, if we are wrong in our conclusion that the order of the district court is appealable as a final order, we hold that this is an appropriate case in which to issue a writ of mandamus to the district court. Mandamus is a remedy reserved for extraordinary situations. *Department of Energy v. Crocker*, Em.App., 1980, 629 F.2d

1341, 1344. We do not use it merely because the trial court has committed reversible error. *Gulf Oil Corp. v. Department of Energy*, Em.App., 1981, 639 F.2d 766, 767. But, in this case, we have an extraordinary situation in which the action of the district court judge goes beyond the boundaries of reversible error.

We conclude that the district court lacked jurisdiction to issue the order which it issued. In its complaint MGPC alleged that the district court has jurisdiction under §§ 1331, 1337, 1361, 2201 and 2202 of 28 U.S.C. 42 U.S.C. §§ 7192, 7193, 15 U.S.C. § 754 which incorporates 12 U.S.C. § 1904 note sections 210 and 211, the First and Fifth Amendments to the United States Constitution, and Federal Rule of Civil Procedure 27. However, we do no injustice to the position of MGPC by reducing the issue to two questions:

> (i) Does the special grant of jurisdiction in 12 U.S.C. § 1904 note section 211(d)(1) and (2) contain restrictions that limit the general grant of jurisdiction in such statutes as 28 U.S.C. § 1331?
>
> (ii) Do the doctrines of exhaustion and ripeness limit the statutory grants of jurisdiction to the district court?

We answer both questions in the affirmative and find that the district court lacked jurisdiction.

### (i) *Section 211(d)(1) and (2)*.

█ The special grant of jurisdiction in § 211(d)(1) and (2) includes these words:

> (1) Subject to paragraph (2), .... no order of [any agency exercising authority under this title] shall be enjoined or set aside, in whole or in part, unless a final judgment determines that such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence.
>
> (2) A district court of the United States ... may enjoin temporarily or permanently the application of a particular ... order issued under this title to a person who is a party to litigation before it.

Paragraph (1) sets up a general rule that requires the district court to embody any interference with agency orders in a final judgment. We have jurisdiction to review such a judgment. This is the normal way in which the actions of administrative agencies are reviewed. It is the way contemplated by 42 U.S.C. § 7193(c), dealing with review of orders of the Federal Energy Regulatory Commission. That subsection provides that an order of the Commission, "based on findings of fact, affirming, modifying, or vacating the Secretary's remedial order, or directing other appropriate relief ... shall, for the purpose of judicial review, constitute a final agency action.... "

Paragraph (2) of § 211(d) creates a very narrow exception to that rule. It allows the district court to issue an injunction to a party in litigation before it, enjoining, temporarily or permanently, the application of an order to that party. Such orders are reviewable by the courts of appeals of the circuits under 28 U.S.C. § 1292(a), but not by this court, unless they are certified to us under 28 U.S.C. § 1292(b). In order to make sense of this statutory scheme we must resist attempts to expand the narrow exception to the general rule. We do not read § 211(d)(2) as an independent grant of jurisdiction. It does not authorize persons who are parties to pending administrative proceedings to rush to court for temporary or permanent injunctive relief whenever they feel aggrieved by some order made by the agency in the course of the proceeding. To hold that it does authorize such proceedings would wipe the rule that judicial review is restricted to final agency action off the books and could produce utter chaos in the administrative proceeding. We think that § 211(d)(2) applies only in cases in which the district court has jurisdiction under § 211(d)(1), or under some other head of jurisdiction.

It may be that, in § 211(d)(2), the word "order" should be read to mean "final order." However, we need not so hold to decide this case. Here, MGPC was in the district court for one purpose only, and that was to ask that court to interfere with the agency enforcement proceedings at their preliminary stage. We do not think that § 211(d)(2) was meant to authorize such an action. We leave to another day the question of whether an agency's preliminary

and procedural order, can ever be enjoined in an action based upon § 211(d)(2) before the agency has made a final order. This would be appropriate, if ever, only under most extraordinary circumstances. Such circumstances are not present here.

Thus, we answer our question (i) in the affirmative.

### (ii) *Exhaustion of Administrative Remedies and Ripeness.*

■ The Department argues that exhaustion is required by § 10(c) of the Administrative Procedure Act, 5 U.S.C. § 704. We doubt the applicability of this statute. 12 U.S.C. § 1904, note section 207(a), together with 42 U.S.C. § 7192(a), appear to imply that it does not apply. The need to exhaust administrative remedies in this case is implied, however, in 42 U.S.C. § 7193(e), which provides:

> (e) Nothing in preceding provisions of this section shall be construed to affect any procedural action taken by the Secretary prior to or incident to initial issuance of a remedial order which is the subject of the hearing provided in preceding provisions of this section, but such procedures shall be reviewable in the hearing.

The exhaustion requirement is firmly established in our prior cases. *Consumers Union of United States, Inc. v. Cost of Living Council*, Em.App., 1974, 491 F.2d 1396, 1399, *cert. denied*, 416 U.S. 984, 94 S.Ct. 2387, 40 L.Ed.2d 761 (1974); *City of New York v. New York Telephone Co.*, Em. App., 1972, 468 F.2d 1401. *See also Petraco-Valley Oil v. Department of Energy*, Em. App., 1980, 633 F.2d 184, 200. "It is axiomatic that agency action cannot be considered final until administrative decision-making has reached a stage where judicial review will not disrupt the orderly process of adjudication." *Marathon Oil Co. v. Department of Energy*, Em.App., 1981, 642 F.2d 436, 439. In our more recent cases we have repeatedly emphasized the need for exhaustion of administrative remedies. *National Distillers and Chemical Corp. v. Department of Energy*, Em.App., 1981, 662 F.2d 754, 756–757 (citing cases). We recognize that the doctrine of exhaustion of administrative remedies is "subject to numerous exceptions," *McKart v. United States*, 1969, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194. However, the present case strikes us as one that clearly illustrates the need for the doctrine. Some of the issues raised are highly technical. They are raised at a very early stage of the administrative process and there is ample time for the agency to correct any possible errors. The federal courts should have no role until the last act of this play.

■ We conclude that the district court lacked jurisdiction, or has at the least exceeded what jurisdiction it had. In such a case, mandamus is a proper remedy. *United States Department of Energy v. Crocker*, supra, 629 F.2d at 1344; *Hines v. D'Artois*, 5 Cir., 1976, 531 F.2d 726, 732. *First Jersey Securities, Inc. v. Bergen*, 3 Cir., 1979, 605 F.2d 690, 701, is closely in point. There, the court concluded:

> We hold that when the district court impermissibly interferes with the legitimate operation of a federal administrative agency, the agency is entitled to the issuance of a writ of mandamus to halt the judicial usurpation of power.

We hold that mandamus is a proper remedy in this case, if we do not have jurisdiction of the appeal.

### V. *The Merits of this Case.*

■ Having decided that we have jurisdiction of this appeal or, if not, that this is an appropriate case for a writ of mandamus, we turn to the merits.

MGPC has gone to the district court without first exhausting its administrative remedies. The OHA has a right to make procedural rulings, indeed, it must of necessity do so, and these are reviewable within the administrative agency after the remedial order has been issued. 42 U.S.C. § 7193(e). In the present case no remedial order has been issued. The administrative process is still at an early stage, that of the resolution of exceptions made to a provisional remedial order. Both parties agree that the intervention of the district court at this stage of the administrative process can be justified only in extraordinary circumstances. They disagree as to whether such circumstances obtain.

The district court supported its order by finding that the actions of the Department were arbitrary, capricious, contrary to due process and truly describable as an "Orwellian nightmare." The judge pointed to the denial of the opportunity to take depositions and to make discovery, and to what he considered to be the denial of a "full and fair" evidentiary hearing. He thought that these opportunities should have been granted in order that MGPC could prove both that the Department of Energy had interpreted its regulations inconsistently and that MGPC had acted in accordance with the advice of the Department. He said that denial of these opportunities would cause irreparable injury because there was a need to preserve testimony for the future. He said that the Department had been guilty of bad faith and that its personnel were "not now completely unbiased and impartial."

In its brief to this court, MGPC draws attention to the allegations made in its complaint to the district court: "that the [Department of Energy] has subjected MGPC to inconsistent enforcement of its regulations, has denied MGPC most necessary discovery and a fair hearing in which to defend itself from the allegations of price violations, and that [the Department] has acted in bad faith in the manner it has conducted its audits and enforcement proceedings against MGPC." It also notes its earlier claim that the Department had failed to give MGPC a copy of a memorandum entitled "Chronological History of MGPC Audit," dated April 19, 1977, even though the Department had claimed to have produced all work papers related to its audits. MGPC says that this was an example of "dubious faith." The brief does not point out to us other particular items of evidence to support MGPC's claims. We are directed to the record below. In oral argument counsel for MGPC emphasized that intervention was warranted at this early stage in the administrative process because of the problem of fast-fading memories.

We have studied the entire record on appeal. We find nothing there that supports the order of the district court. There is no evidence of bias or bad faith. Indeed, MGPC did not argue seriously in support of this allegation. It complained in general terms of "institutional bad faith" on the basis of inconsistent stances taken by the Department. It complained that it was unable to claim bias on the part of the presiding officer for the proposed hearing because it did not know who the presiding officer would be. The district court thought that bias was the "bottom line" of the complaint, but there is nothing to support this claim of bias.

The verified complaint contains several references to what MGPC thinks were improper communications between members of Congress and the Department and to other "ex parte" communications. These allegations are not detailed nor are sources specified. We think that the existence of such flimsy allegations is not sufficient to justifying taking the matter out of the hands of the administrative agency. The case is a far cry from the situation in *Gulf Oil Corp. v. Department of Energy, supra.*

There is some dispute between the parties as to whether the Department has fully complied with the order of OHA that it hand over the audit working papers. MGPC claims that the Department has failed to hand over some papers and made improper decisions from others. We see nothing here that goes beyond normal disputes about the interpretation of procedural rulings. The existence of this dispute cannot justify the intervention of the district court.

There is very little argument in MGPC's brief to show why the district court's order was correct. There seems to be a claim that insofar as the procedures of the Department differ from those of a federal trial court there is a denial of due process. This is not the case. The administrative process works by the use of affidavits and written legal submissions except where a special need is shown for live witnesses. MGPC argues that the history of the price regulations and of their enforcement shows such confusion that MGPC did not have fair notice of the charges against it. However, there is no need for a court to rule on this question now. As yet no violation has been

found and no penalty has been assessed. When agency proceedings have concluded and a final order has been issued, a court, in a proceeding to review it, can examine the record to see whether MGPC had fair notice of the violation and a fair hearing.

MGPC seems to claim that it should not be penalized for misinterpreting the regulations because the difficulties the Department itself had in applying them show them to be incomprehensible. However, if MGPC wishes to rely on this argument it must make it first to the agency and must say how it in fact did interpret the regulations so that the agency can judge the reasonableness of that interpretation. There is no need for a court to act on this question now.

MGPC says that it is concerned with fast-fading memories. Perhaps this worry is connected with its claim that it relied upon informal advice given to it by various people in the Department and its predecessors. However, MGPC has not drawn our attention to any affidavits by its own people which set out in detail what informal assurances were given by whom or when, or how these particular assurances affected its actions. If MGPC does present such evidence to the OHA then the Department can decide whether to introduce contrary affidavits or to rest on the record. If contrary affidavits were produced then OHA would have to decide whether or not a hearing was necessary. After a final order was issued, all of these points would be open to judicial review. There would be no problem of fading memories. We believe that MGPC's decision to go to the district court before the final administrative adjudication will cause, and has already caused, more rather than less delay, and will exacerbate any problem of memory that there may be.

MGPC claims that the administrative proceedings suffer from a fundamental infirmity and hence are outside the reach of the exhaustion doctrine. It cites *Amos Treat and Co. v. SEC*, D.C.Cir., 1962, 306 F.2d 260. It says that the denial of the discovery it demanded, the denial of the type of evidentiary hearing that it says it wants, and the Department's bad faith are each a fundamental infirmity. We have found no evidence of bad faith in the record, and almost none to suggest that the denial of discovery and a trial-like hearing was wrong, much less to suggest that it amounts to a fundamental infirmity. There is nothing in the record to support judicial intervention at this stage of the administrative process.

VI. *Conclusion.*

The order appealed from is reversed, and the case is remanded to the district court with instructions to dismiss the action with prejudice.

Let a writ of mandate issue directing the trial court to vacate its order of January 12, 1981, and to dismiss the action with prejudice.

SPEARS, Judge, concurring.

I concur, although I do not share the view that there is almost no evidence to suggest that denial of discovery and a trial-like hearing was wrong. On the contrary, the record is replete with instances of indecision and foot dragging by the Department of Energy in its dealings with MGPC. In my opinion this was wrong—dead wrong—so I can understand the concerns of MGPC, as well as the frustrations the district judge must have experienced in hearing and deciding this case. Nevertheless, I agree, after a review of the 1,547 page record, and with the benefit of hindsight, that the conduct of the Department did not rise to the level necessary to justify judicial intervention of the administrative process.