MARINE PETROLEUM COMPANY,
Plaintiff-Appellee,

v.

CHAMPLIN PETROLEUM COMPANY,
Defendant-Appellee,

and

Charles W. Duncan (Successor to James R. Schlesinger) Secretary of Energy, Defendant-Appellant.

No. 8–4.

Temporary Emergency Court of Appeals.

Argued Oct. 18, 1979.

Decided Feb. 25, 1980.

John P. McKenna, Dept. of Energy, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Dennis G. Linder, C. Max Vassanelli, and Stephanie Lachman Golden, of the Civil Division, Dept. of Justice, Washington, D. C., Paul G. Wallach and Alexander P. Humphrey IV, Dept. of Energy, Washington, D. C., and Neal J. Tonken, Paul M. Geier, and Dean S. Cooper, Dept. of Energy, Washington, D. C., were on the brief for defendant-appellant Secretary of Energy.

Cecil E. Munn, of Cantey, Hanger, Gooch, Munn & Collins, Fort Worth, Tex., with whom Charles A. Zubieta and Kerry R. Brittain, of Champlin Petroleum Company, Fort Worth, Tex., Richmond C. Coburn, of Coburn, Croft & Putzell, St. Louis, Mo., and Donald B. Craven, of Miller & Chevalier, Washington, D. C., were on the brief for defendant-appellee Champlin Petroleum Company.

Michael J. Madigan, of Akin, Gump, Hauer & Feld, Washington, D. C., with whom R. Bruce McLean, Edward L. Rubinoff, and Leslie K. Dellon, Washington, D. C., of the same firm, were on the brief for plaintiff-appellee Marine Petroleum Company.

Before GRANT, BECKER and BONSAL, Judges.

WILLIAM H. BECKER, Judge.

## I.

*Decision On Jurisdiction Of This Appeal*

The defendant-appellant Secretary of Energy (DOE for Department of Energy here-

inafter) filed this appeal from an order of the district court denying a motion of DOE for judgment on the pleadings, which motion sought dismissal of DOE as a party to a private action, commenced by plaintiff-appellee Marine Petroleum Company (Marine) against defendant-appellee Champlin Petroleum Company (Champlin) under § 210[1] of the Economic Stabilization Act (ESA), as amended. In that private action Marine alleged that Champlin had overcharged Marine in sales of petroleum products in violation of the Mandatory Petroleum Price Regulations, 10 C.F.R. Part 212, and Marine sought to recover the alleged overcharges from Champlin, treble damages, and to secure injunctive relief. Later, with leave of the district court, the Federal Energy Administration (FEA) (predecessor of DOE)[2] was added as a party defendant without limitation.

At the time the appeal of DOE was filed no final judgment had been entered in the private action. The district court, although requested to do so, did not authorize a discretionary interlocutory appeal under 28 U.S.C. § 1292(b).

In the absence of an appealable final judgment, or an order of the district court authorizing an appeal under § 1292(b), DOE contends that this appeal is from a final decision on a separate important collateral issue, as authorized by the construction of 28 U.S.C. § 1291 in *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (*Cohen*) and other cases following the *Cohen* case. (DOE further stated, in its jurisdictional statement required by Rule 15(c) of the general rules of this Court, that it was authorized to file this appeal by the judicial review provisions of § 211 of ESA, 12 U.S.C. § 1904 note, incorporated by § 5(a) of The Emergency Petroleum Allocation Act of 1973 (EPAA) as amended, 15 U.S.C. § 754(a), and 28 U.S.C. § 1291, *supra*.)

DOE states that the district court joined DOE as a party to the private action by Marine against Champlin following the decision of the Temporary Emergency Court of Appeals (TECA) in *Longview Refining Company v. Shore*, 554 F.2d 1006, *cert. denied* 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977) (*Longview*); that in the private action in the district court no claim for relief is asserted by or against DOE or the United States; that DOE filed a motion seeking dismissal of DOE as an adversary party in a plenary role, on the grounds that no claim was stated for or against DOE, and therefore no case or controversy existed between DOE and either of the private parties to the action in the district court.

---

1. § 210. *Suits for damages or other relief*

"(a) Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages.

"(b) In any action brought under subsection (a) against any person renting property or selling goods or services who is found to have overcharged the plaintiff, the court may, in its discretion, award the plaintiff reasonable attorney's fees and costs, plus whichever of the following sums is greater:

"(1) an amount not more than three times the amount of the overcharge upon which the action is based, or

"(2) not less than $100 or more than $1,000; except that in any case where the defendant establishes that the overcharge was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to the avoidance of such error the liability of the defendant shall be limited to the amount of the overcharge: Provided, That where the overcharge is not willful within the meaning of section 208(a) of this title, no action for an overcharge may be brought by or on behalf of any person unless such person has first presented to the seller or renter a bona fide claim for refund of the overcharge and has not received repayment of such overcharge within ninety days from the date of the presentation of such claim.

"(c) For the purposes of this section, the term 'overcharge' means the amount by which the consideration for the rental of property or the sale of goods or services exceeds the applicable ceiling under regulations or orders issued under this title.

2. All references in this opinion to the DOE include the Department of Energy, the incumbent Secretary of Energy, and the predecessor Federal Energy Administration, as appropriate.

DOE further states that extensive discovery permitted against DOE had cast DOE in the plenary role of an adversary party in the private action, inconsistent with the advisory role that TECA envisioned that DOE would assume under the *Longview* case, *supra;* that the motion of DOE for judgment on the pleadings was summarily denied on February 5, 1979; that DOE took this "immediate appeal" because the motion for dismissal of DOE had been finally determined by the district court; that, because in the private action no claims for relief by or against DOE were asserted, the question of the alleged error in denying the requested dismissal of DOE as a party will not be merged in the final judgment between the private parties; and therefore the order of the district court denying the dismissal of DOE as a party is appealable as a final decision on a collateral issue as defined in *Cohen v. Beneficial Industrial Loan Corporation, supra,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

Further, in the statement by DOE required by Rule 15(c) of the general rules of this Court, DOE stated: that in the action below DOE had produced 20,000 pages of documents to Champlin pursuant to Rule 34, F.R.Civ.P., requests, had answered three sets of interrogatories and had produced a high ranking official of DOE for eleven days of deposition testimony; that the district court denied the motion of DOE to terminate or limit further discovery from DOE, and for reconsideration and stay of an order regarding an administrative subpoena issued by DOE and that only an appeal at this time would provide an opportunity for DOE to challenge the denial of the motion of DOE for judgment on the pleadings.

Finally, in the statement of appellant required by Rule 15(c), DOE states that there is no transcript of the proceedings below pertinent to the appeal of DOE.

We agree with DOE that this is an appeal from a final decision on a separate important collateral issue, authorized by 28 U.S.C. § 1291, *supra,* and the many cases following the *Cohen* case. The reasons for this decision follow.

### *Order of TECA Staying Proceedings In District Court Pending Appeal*

On the same day the notice of appeal and the statement required by Rule 15(c) were filed by DOE, DOE also filed in this Court a motion, pursuant to Rule 8(a), F.R.Civ.P., for a stay of discovery "against" DOE pending appeal, to which was attached an "order" of the district court of February 5, 1979, (1) denying the motion of DOE for judgment of dismissal on the pleadings, (2) denying the motion of DOE to terminate or limit discovery from DOE and (3) denying the motion of DOE for reconsideration and stay of enforcement of the order of the district court of September 7, 1978, relating to an administrative subpoena issued by DOE. The order and memorandum of the district court of February 5, 1979 showed, among other things, that the motion for judgment of dismissal of DOE on the pleadings was denied by the district court "in light of *Longview Refining Company v. Shore,* 554 F.2d 1006 (Em.App.1977), *cert. denied,* 434 U.S. 1977 [98 S.Ct. 126, 54 L.Ed.2d 98]."

On March 9, 1979, Chief Judge Edward Allen Tamm of TECA entered an order granting the motion of DOE for a stay of discovery from DOE in the district court pending appeal.

### *Motion of Champlin to Dismiss Appeal And Dissolve Order of TECA Staying Discovery, And Order of TECA Denying That Motion, And Motion of Champlin to Reconsider*

On March 12, 1979, appellee Champlin filed in this Court a motion to dismiss the appeal of DOE, and to dissolve the order staying discovery from DOE in the district court pending appeal. This motion contained statements of legal conclusions and allegations of fact concerning appealability of the challenged order, and the merits of the contentions of DOE.

On March 14, 1979, Chief Judge Tamm of TECA entered an order denying the motion of Champlin to dismiss the appeal of DOE

and to dissolve the order staying discovery. Thereafter, on April 20, 1979, Champlin moved this panel to reconsider the order denying dismissal of the appeal. This motion to reconsider is now pending.

*Grant of Motion of DOE To Suspend Briefing Pending Decision in Dyke v. Gulf Oil Corporation And Consolidated Cases*

On March 26, 1979, DOE moved to suspend briefing in this appeal until the appeals in *Dyke v. Gulf Oil Corporation* and consolidated cases, said to involve at least one of the issues in this appeal, were decided.

This motion of DOE was granted on April 4, 1979, by two judges of this panel in the absence of one of the judges. Since then the *Dyke* case and consolidated cases have been decided. *Dyke v. Gulf Oil Corporation*, 601 F.2d 557 (Em.App.1979).

*Motion of DOE for Summary Reversal*

On June 25, 1979, purporting to act under Rule 33 of the general rules of this Court, DOE filed a motion for summary reversal, contending that TECA held in *Dyke v. Gulf Oil Corporation, supra*, 601 F.2d 557 (Em.App.1979) that the case of *Longview Refining Company v. Shore, supra*, 554 F.2d 1006 (Em.App.1977), does not authorize joinder of DOE as a party in private damage actions under § 210 of ESA when the plaintiff asserts no claim against DOE. This motion for summary reversal is pending.

*Additional Detail of Proceedings in the District Court and By DOE*

This action was brought in 1975 by plaintiff-appellee Marine against defendant-appellee Champlin in the United States District Court for the Eastern District of Missouri. In it Marine alleged that Champlin charged, for gasoline sold to Marine, prices in excess of the "maximum allowable price," as defined by 10 C.F.R. § 212.82. For relief, Marine sought (a) a declaratory judgment that Champlin charged Marine prices in excess of those permitted by the applicable maximum price regulations, (b) a

permanent injunction to prevent future overcharges, and (c) treble damages. Jurisdiction of Marine's action against Champlin was based upon § 210 of the Economic Stabilization Act of 1970 (ESA), 12 U.S.C. § 1904 note, as incorporated into the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C. § 754 (Memorandum in Support of Motion of Defendant-Appellee Champlin to Reconsider, hereinafter Motion of Champlin to Reconsider, at page 2).

In October 1975, DOE began formal administrative compliance proceedings against Champlin concerning the alleged overcharges by Champlin which continued at least through May 21, 1979 (Motion of Champlin to Dismiss Appeal and Dissolve Order Staying Discovery, hereinafter Motion of Champlin to Dismiss, Exhibit A at page 1). On February 23, 1977, Scott H. Lang, Assistant General Counsel for Litigation, on behalf of the Federal Energy Administration (FEA), predecessor of DOE, and at the request of Marine's counsel, wrote to the district court advising the court of "the pendency of its related compliance proceeding and to note that it is available to participate in this proceeding or otherwise be of assistance to the Court to whatever extent the Court deems appropriate." (Motion of Champlin to Dismiss, Exhibit A at page 2). Marine then filed a First Amended Complaint including the FEA as a defendant on February 24, 1977 (Motion of Champlin to Dismiss at page 2). The district court ordered the FEA (now DOE) added as a formal party defendant on March 3, 1977 (Motion of Champlin to Reconsider at pages 2–3). The "Answer of the Federal Energy Administration to the First Amended Complaint" was filed on May 6, 1977 (Brief of Champlin at page 10 & Exhibit B).

After the FEA (now DOE), by order of court, had been added as a formal party defendant in the action, Champlin initiated discovery from the FEA. The FEA filed answers to Champlin's first set of interrogatories on July 19, 1977, answers and objections to Champlin's second set of interrogatories on December 1, 1977, and answers and objections to Champlin's third set of

interrogatories on April 20, 1978 (Brief of Champlin at page 13). DOE states that the document and deposition discovery, described above, (in the sixth paragraph of Part I), was ordered by the district court in addition to this discovery by interrogatories.

The administrative investigation and compliance proceedings by DOE, concerning the alleged overcharges by Champlin, began at least by October 1975, and continued during the course of this private litigation between Marine and Champlin. On September 19, 1977, the FEA (now DOE) issued a Remedial Order (later revised) against Champlin, alleging violation of the same class of purchaser regulations at issue in the private action by Marine against Champlin under § 210 of ESA (Brief of Champlin at page 10). On April 4, 1978, the DOE moved for a stay of the action by Marine against Champlin until final determination of the related administrative compliance proceedings (Brief of Champlin at page 13). The district court denied that motion for a stay on May 12, 1978 (Response of Marine to Motion of DOE for Summary Reversal, hereinafter Marine Response, at page 3), and in July 1978 refused to certify, pursuant to 28 U.S.C. § 1292(b), a discretionary interlocutory appeal from the denial of that motion to stay (Motion of Champlin to Reconsider at page 6).

On November 2, 1978, DOE, as stated above, moved for a judgment on the pleadings seeking dismissal as a party from the private action, on the grounds that no claim had been stated against DOE upon which relief could be granted (Brief of DOE in Support of Motion for Summary Reversal, at page 2, and Brief of Champlin at page 2). DOE also moved for a stay of discovery pending the decision of TECA in the then pending consolidated appeals, later decided under the style *Dyke v. Gulf Oil Corpora-*

*tion, supra,* 601 F.2d 557 (Em.App.1979) (Marine Response at page 4). The appeals in the *Dyke* case involved the question whether joinder of the DOE as a formal party is required in private actions under § 210 of the ESA, 12 U.S.C. § 1904 note, and related questions. On February 5, 1979, the district court denied this motion of DOE for a dismissal and for a stay of discovery pending the decision in the appeals in the *Dyke* cases.

The memorandum of the district court of February 5, 1979, ordering denial of the motion of DOE for judgment on the pleadings, is as follows:

> The DOE has also moved for judgment on the pleadings. The motion will be denied in light of *Longview Refining Co. v. Shore,* 554 F.2d 1006 (T.E.C.A.1977), *cert. denied,* 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977).

(Memorandum and Order of February 5, 1979, Order Nunc Pro Tunc of March 5, 1979, attached to Motion for Stay Pending Appeal). This action of the district court was consistent with the construction of the *Longview* case by the two district courts whose orders were under review in the *Dyke* case. *See,* 601 F.2d at 563.

In the administrative compliance proceedings by DOE, the DOE Office of Hearings and Appeals (OHA) issued a Decision and Order on May 21, 1979, finding that Champlin had violated applicable regulations, and remanding the proceedings to the DOE Office of Special Counsel for modification of the earlier Remedial Order of September 19, 1977, consistent with its decision (OHA Decision and Order, May 21, 1979, Champlin Oil Company, Dkt. No. DRA–0012, Brief of Champlin at page 10 note 2). Champlin challenged the Decision and Order of the OHA in an action filed pursuant to § 211 [3]

---

**3.** Section 211(a) provides:

"(a) The district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder, notwithstanding the amount in controversy; except that nothing in this subsection or in subsection (h) of this section affects the power of any court of competent jurisdiction to con-

sider, hear, and determine any issue by way of defense (other than a defense based on the constitutionality of this title or the validity of action taken by any agency under this title) raised in any proceeding before such court. If in any such proceeding an issue by way of defense is raised based on the constitutionality of this title or the validity of agency action under this title, the case shall be subject to

of the ESA, 12 U.S.C. § 1904 note, in the Northern District of Texas on May 25, 1979 (No. CA–4–79 210 E, Marine Response, Exhibit C). There is a question whether this action was prematurely filed because the amount of alleged overcharges had not been finally determined by DOE, and because the administrative findings were not final and were subject to modification or vacation. Cf. *Midland Energy Corporation v. Total Petroleum, Inc.*, 608 F.2d 884 (Em. App.1979).

## II.

### Questions Remaining For Decision In This Appeal

From the foregoing complicated history of the judicial proceedings in the district court and in this Court and the administrative proceedings by FEA and DOE, it is concluded that the following questions remain for decision on this appeal:

A. Should The Motion of Champlin to Reconsider the Denial of The Motion of Champlin to Dismiss The Appeal be Granted and The Appeal Dismissed for Lack of Subject Matter Jurisdiction?

B. Should The Motion of DOE for Summary Reversal be Granted?

C. If TECA Has Jurisdiction to Determine The Appeal of DOE On The Merits, And The Motion of DOE for Summary Reversal is Not Granted, What Action Should be Taken on The Appeal of DOE?

## III.

### A.

### Decisions On Questions Presented And Reasons For Decisions

The decisive issue on the first question to be decided is whether the orders of the district court were appealable under 28 U.S.C. § 1291, as construed in *Cohen v. Beneficial Industrial Loan Corporation, supra*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed.

1528 (1949) and subsequent cases applying the doctrine of the *Cohen* case.

### Contentions of DOE

DOE contends that this appeal meets all requirements of the *Cohen* case, and other cases applying the doctrine of the *Cohen* case; that the order of the district court denying the motion of DOE for judgment of dismissal finally decided an important separate collateral issue, which is effectively unreviewable after final judgment, and therefore is appealable under the doctrine of *Cohen v. Beneficial Industrial Loan Corporation, supra*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

### Contentions of Champlin

Champlin contends that this Court has no jurisdiction because the order appealed from was interlocutory and not certified by the district court pursuant to 28 U.S.C. § 1292(b). It also contends that the order of the district court was not final as required by 28 U.S.C. § 1291; that it did not decide an important issue completely separate from the merits of the action; that it would be effectively reviewable after the final judgment; and that the rule of the *Cohen* case is therefore not applicable (Brief of Champlin at pages 3–7).

### Contentions of Marine

Marine agreed in oral argument, and impliedly in its brief, that this Court has jurisdiction of this appeal under § 1291 and the doctrine of the *Cohen* case, but disagrees with DOE on the type of relief that should be granted on this appeal and thereafter (Marine Response at pages 7–11).

### Conclusion that TECA Has Jurisdiction of This Appeal

In recognition of our "continuing duty to inquire into our jurisdiction," and to assure that "safeguards established by Congress against excessive interlocutory demands upon us to the undue delay of final decision

removal by either party to a district court of the United States in accordance with the appli-

cable provisions of chapter 89 of title 28, United States Code.

below are not disregarded," *Exxon Corporation v. FEA,* 516 F.2d 1397, l.c. 1403 (Em.App.1975), and also our "continuing duty to take cognizance of jurisdictional limitations upon our own motion when a question occurs," *Associated General Contractors of America, Inc. v. Laborers International Union, Local 612,* 489 F.2d 749, l.c. 751 (Em.App.1973), the motion of Champlin for reconsideration of the denial by Chief Judge Tamm of motion of Champlin to dismiss this appeal for lack of subject matter jurisdiction will be granted, and the question of jurisdiction will be reconsidered. The question of appellate jurisdiction has been fully briefed by the parties in the Motion of Champlin to Dismiss, the Motion of Champlin to Reconsider, the Motion of DOE for Summary Reversal, and the suggestions in support of and in opposition to those motions. We also heard oral argument on the question. A review of the contentions of the parties and the proceedings in the district court, appearing from the files, briefs and oral argument, provides a sufficient record on which to decide the question of jurisdiction of this action.

For the reasons which follow, after reconsideration, the denial by Chief Judge Tamm of the motion of Champlin to dismiss this appeal for lack of subject matter jurisdiction is affirmed.

### 1. Jurisdiction of TECA

In *Texaco v. DOE* (Em.App.1979), 616 F.2d 1193, at 1196, this Court held that:

> The Temporary Emergency Court of Appeals is a Court of special and limited jurisdiction. In creating TECA, Congress gave it "exclusive jurisdiction of all appeals from the district courts in cases and controversies arising under this title or under regulations or orders issued thereunder." § 211(b)(2), Economic Stabilization Act of 1970, 12 U.S.C. § 1904. The Emergency Petroleum Allocation Act, 15 U.S.C. § 754, incorporated this grant of special jurisdiction.

Further, the United States Supreme Court in *Bray v. United States,* 423 U.S. 73, l.c. 74, 96 S.Ct. 307, l.c. 309, 46 L.Ed.2d 215, l.c. 217 (1975) held that:

This judicial-review provision [§ 211(b)(2)] was designed to provide speedy resolution of cases brought under the Act and "to funnel into one court all the appeals arising out of the District Courts and thus gain in consistency of decision." S.Rep.No.92–507, p. 10 (1971). The provision thus carved out a limited exception to the broad jurisdiction of the courts of appeals over "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291.

■ From these and other authorities it is concluded that 28 U.S.C. § 1291 is applicable to authorized appeals to this Court.

■ The order appealed from was entered in an action brought pursuant to § 210 of the ESA, 12 U.S.C. § 1904 note. So this appeal, if otherwise proper, is within the special statutory grant of this Court's jurisdiction. § 211(b)(2) of the ESA, 12 U.S.C. § 1904 note.

■ Section 211(b)(1) of the ESA, 12 U.S.C. § 1904 note, provides that the Temporary Emergency Court of Appeals "shall have the powers of a circuit court of appeals with respect to the jurisdiction conferred on it by this title." *See* the discussion in note 9 of *Dyke v. Gulf Oil Corporation, supra,* 601 F.2d at 562. In hearing authorized appeals, this court is therefore governed by all statutes applicable to courts of appeals, including 28 U.S.C. §§ 1291 and 1292, except as otherwise provided in § 211 of the ESA, 12 U.S.C. § 1904. *Cf. Exxon Corporation v. FEA,* 516 F.2d 1397 (Em. App.1975), holding that there is no appeal as of right to TECA from the granting or denial of interlocutory injunctions.

### 2. Preliminary Considerations

Several preliminary considerations are necessary in the analysis of our jurisdiction.

■ Initially, it is important to note that the district court in this case has not certified an interlocutory discretionary appeal under 28 U.S.C. § 1292(b) as was done by the district courts in *Dyke v. Gulf Oil Corporation,* and consolidated cases, *supra,* 601

F.2d at 559 (Em.App.1979). Appellee Champlin is correct in its contention that, ordinarily, interlocutory appeals may be heard only upon certification by the district court pursuant to 28 U.S.C. § 1292(b), and in the discretion of the appellate court.

However, DOE contends, and Marine concurs, that this appeal of the orders of the district court denying the DOE motion for judgment of dismissal on the pleadings, and continuing compulsory adversary discovery from DOE, may be brought under the collateral order doctrine announced in *Cohen v. Beneficial Industrial Loan Corporation, supra,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

It has been recognized that this Court, with the power of a circuit court of appeals over cases within its jurisdiction, has the power and duty, under the doctrine of the *Cohen* case, to hear appeals of final decisions determining separate important collateral claims of right. This is clear from the decisions of this Court in *Allied Paper, Inc. v. United Gas Pipe Line Company,* 561 F.2d 821, l.c. 825 (Em.App.1977), and *Sun Oil Company of Pennsylvania v. FEA,* 572 F.2d 867, l.c. 871 (Em.App.1978), applying the rule of the *Cohen* case.

In *Allied Paper, Inc. v. United Gas Pipe Line Company, supra,* 561 F.2d 821 (Em. App.1977), the district court ordered a stay of the federal proceeding pending resolution of an action between the same parties on the same issues in the state court. Allied Paper, Inc. appealed to TECA from the order for a stay. United Gas Pipe Line Company filed a cross-appeal from a holding of the district court that Phase II regulations were applicable. Each party moved to dismiss the appeal of the other party, on the ground that the decisions were not final decisions appealable as of right under 28 U.S.C. § 1291.

In that case the Temporary Emergency Court of Appeals held that:

> This court has jurisdiction to maintain the appeal from the stay order as a final decision under the collateral order doctrine enunciated in *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed.2d 1528 (1949). United's cross-appeal from the district court's holding that Phase II governed the price charged for gas for the five-year term of the agreement is also appealable because a ruling on the scope of Phase II is basic to the decision to stay the federal proceedings. . . . It is appropriate and will assist judicial economy for this court to exercise jurisdiction under § 1291 to resolve the issues raised on both appeals. (*Allied Paper, Inc. v. United Gas Pipe Line Company, supra,* 561 F.2d at 825.)

In *Sun Oil Company of Pennsylvania v. FEA, supra,* 572 F.2d 867 (Em.App.1978), the United States District Court for the Southern District of Texas granted a motion to stay proceedings pending resolution of an action in the District of Kansas. It was contended by the appellees that the decision of the Texas district court was not a final decision on a collateral issue within the meaning of 28 U.S.C. § 1291. The Temporary Emergency Court of Appeals stated that the "scope of review in this court under Section 211(b)(2) is properly restrained by the same policy considerations that accrue to 28 U.S.C. § 1291 jurisprudence." 572 F.2d at 869. Then, appellate jurisdiction of TECA, under the construction of 28 U.S.C. § 1291 in the *Cohen* case, was confirmed by TECA, which cited *Allied Paper, Inc., supra.* The stay order was vacated on the appeal, and the case remanded to the district court.

Under the authorities discussed above, we hold that the doctrine of the *Cohen* case applies to authorize appeals to this Court in appropriate circumstances.

Thus, having determined that we have jurisdiction to hear appeals authorized by the doctrine of the *Cohen* case, we turn now to determine the application of that doctrine to this appeal.

### 3. Application of the Doctrine of the *Cohen* Case

The United States Supreme Court applied and summarized the doctrine of the *Cohen* case in the leading case, *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), stating that:

There the Court considered the applicability in a federal diversity action of a forum state statute making the plaintiff in a stockholder's derivative action liable for litigation expenses, if ultimately unsuccessful, and entitling the corporation to demand security in advance for their payment. The trial court ruled the statute inapplicable, and the corporation sought immediate appellate review over the stockholder's objection that the order appealed from was not final. This Court held the order appealable on two grounds. First, the District Court's finding was not "tentative, informal or incomplete," 337 U.S., at 546, but settled conclusively the corporation's claim that it was entitled by state law to require the shareholder to post security for costs. Second, the decision did not constitute merely a "step toward final disposition of the merits of the case. . . ." Ibid. Rather, it concerned a collateral matter that could not be reviewed effectively on appeal from the final judgment. The Court summarized its conclusion in this way:

"This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Ibid. (417 U.S. at 171–72, 94 S.Ct. at 2149, 40 L.Ed.2d at 745.)

Further, the reason for the rule of the *Cohen* case was explained in *Eisen v. Carlisle and Jacquelin, supra,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), in the following language:

Restricting appellate review to "final decisions" prevents the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy. While the application of § 1291 in most cases is plain enough, determining the finality of a particular judicial order may pose a close question. No verbal formula yet devised can explain prior finality decisions with unerring accuracy or provide an utterly reliable guide for the future. We know, of course, that § 1291 does not limit appellate review to "those final judgments which terminate an action . . . .," *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 545, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), but rather that the requirement of finality is to be given a "practical rather than a technical construction." Id., at 546. The inquiry requires some evaluation of the competing considerations underlying all questions of finality—"the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." *Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 511, 70 S.Ct. 322, 94 L.Ed. 299 (1950) (footnote omitted). (417 U.S. at 170–71, 94 S.Ct. at 2149, 40 L.Ed.2d at 744–45.)

The requirements for allowing an appeal under the *Cohen* doctrine were recently stated in *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). In that case, the United States Supreme Court stated that:

To come within the "small class" of decisions excepted from the final judgment rule by *Cohen,* the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment. [footnote omitted] *Abney v. United States,* 431 U.S. 651, 658, 97 S.Ct. 2034, 52 L.Ed.2d 651, *United States v. McDonald,* 435 U.S. 850, 855, 98 S.Ct. 1547, 56 L.Ed.2d 18. (437 U.S. at 468–69, 98 S.Ct. at 2458, 57 L.Ed.2d at 357–58.)

The "competing considerations underlying all questions of finality," *Eisen v. Carlisle & Jacquelin, supra,* 417 U.S. at 171, 94 S.Ct. at 2149, 40 L.Ed.2d at 745, and the requirements of the *Cohen* doctrine, approved as late as 1978 in *Coopers & Lybrand v. Livesay, supra,* 437 U.S. at 468–69, 98 S.Ct. at 2458, 57 L.Ed.2d at 357–58, will now be applied to this appeal.

a. Final Decision of Claim of Right

In affirming the existence and applying the doctrine of the *Cohen* case the Supreme

Court of the United States in *Eisen v. Carlisle and Jacquelin, supra,* quoted with approval the summarized conclusion from the *Cohen* case, describing the appealable decisions. The first part of the summary quoted in the *Eisen* opinion is

> This decision appears to fall in that small class which finally determine claims of right .... (417 U.S. at 171, 94 S.Ct. at 2149, 40 L.Ed. at 745.)

We conclude that the order of the district court in denying the motion of DOE for a judgment on the pleadings for dismissal as a party to the private action, and thereby continuing the orders for compulsory discovery by DOE as an adversary party in a plenary role, was a final decision on a claim of right of DOE. The order appealed from was "a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it" within the meaning of the language of the *Cohen* case, *supra,* 337 U.S. at 546–47, 69 S.Ct. at 1226, 93 L.Ed.2d at 1536. Even if possible, an appeal by DOE from a final judgment could not provide a remedy for the claimed wrongful imposition of the heavy burdens of response and extensive discovery in a plenary role as an adversary party. For all practical purposes, the action of the district court appealed from is final.

b.  The Claim of Right Is Separable From And Collateral To Rights Asserted in The Private Action by Marine Against Champlin, And Too Important To Be Denied Review

The second requirement of the summary of the doctrine of the *Cohen* case quoted in the *Eisen* case, is that the claimed right be "separable from, and collateral to, rights asserted in the action, too important to be denied review ...." 417 U.S. at 171–72, 94 S.Ct. at 2149, 40 L.Ed.2d at 745. We conclude that the claimed right of DOE denied by the district court amply meets this requirement. It clearly appears that the claimed right, to be free from (a) the obligations to make discovery in the plenary role as an adversary party; (b) the obligation to respond to the pleadings and other pretrial obligations; and (c) particularly the obligations to make major discovery in a complex private action, without prospect of any relief on the merits of the private action, is a right "separable from and collateral to rights asserted in the action" by Marine against Champlin.

Further, this claimed right asserted by a major and critical agency of the United States government engaged in administration of a pervasive emergency legislative program vital to the national welfare is too important to be denied review. The denial by the district court of the claimed right of DOE to be free from joinder in the plenary role as an adversary party transcends the importance of the orders of the district courts, from which appeals were allowed, in the *Cohen* and *Eisen* cases. The possibility of joining DOE in any private action under § 210 of the ESA, 12 U.S.C. § 1904 note, for recovery of overcharges, or related relief, risks paralyzing the national operations of DOE and "likely would hinder, disrupt, and render torpid the statutory scheme for expedited enforcement." *Dyke* case, *supra,* 601 F.2d at 567. The discovery alleged to have been compelled, and possible to be compelled in the private action is massive and likely to have a detrimental effect on deployment of personnel of DOE, and the ongoing administration of the statutory program of regulation of prices and allocation of petroleum products.

c.  The Claimed Right Is Too Independent of the Private Action Itself to Require That Appellate Consideration Be Deferred Until The Whole Case Is Adjudicated

The last requirement of the summary of the conclusion of the *Cohen* case, quoted in the opinion in the *Eisen* case is that the claimed right be "too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 417 U.S. at 172, 94 S.Ct. at 2149, 40 L.Ed.2d at 745. The claimed right in this case clearly fulfills this requirement. The claimed right of DOE to be free of the burdens and responsibilities of an adversary

party in a plenary role in a private action of this type is independent of the claims and defenses of the private parties. Further, official actions of DOE in respect to the alleged overcharges are judicially reviewable in a separate action under § 211 of ESA, 12 U.S.C. 1904 note. In fact such an action has been filed by Champlin in the Northern District of Texas, even though it may have been prematurely filed.

The degree of independence of the claimed right of DOE in the private action by Marine against Champlin is so obvious and clear that appellate consideration should not be deferred until the whole case is adjudicated. To defer appellate consideration now is likely to make it impossible legally and practically to provide any ultimate relief to DOE if DOE proves correct in its claim of right. So, the order appealed from is effectively unreviewable after the private action is adjudicated.

The above conclusions concerning the applicability of the doctrine of the *Cohen* case, as affirmed in the *Eisen* case, to this appeal are supported by the recent decisions in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), reaffirming the *Cohen* rule and distinguishing its lack of application to an interlocutory class action order; and *In re General Motors Engine Interchange Litigation*, 594 F.2d 1106, l.c. 1121 (7th Cir.), *cert. denied*, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979). *See generally*, 9 *Moore's Federal Practice* § 110.10 (2d ed. 1979); 15 Wright, Miller & Cooper, *Federal Practice And Procedure* § 3911 (1976 & Supp.1979) and cases therein cited.

### B.

The second question presented for decision is whether the motion of DOE for summary reversal of the decision of the district court should be granted in the light of *Dyke v. Gulf Oil Corporation, supra*, 601 F.2d 557 (Em.App.1979), decided by TECA after the district court's denial of the motion for judgment on the pleadings.

### Contentions of DOE

DOE contends that

*Dyke* presented the same question as this appeal—the correctness of a district court's refusal to dismiss the agency (here, the Secretary) as a party to private damage litigation where joinder is based upon the decision in *Longview, supra*, and no claims are stated against the agency. TECA reversed the district courts in *Dyke*, holding that, under such circumstances, the Department may not be joined as a party. Since the question of the Secretary's dismissal as a party in the instant case is fully answered by the *Dyke* decision, the decision below should be reversed summarily. (Brief of DOE In Support of Motion for Summary Reversal at page 2.)

DOE also contends that Champlin does not show that any "compelling circumstances," within the meaning of the *Dyke* case, *supra*, 601 F.2d at 569, exist in this action to justify the joinder of DOE in a plenary role as an adversary party. DOE contends further that the proposal of Champlin that DOE be dropped as a party only after allowing discovery by Champlin is precluded by the language in the *Dyke* case that discovery cannot be the sole purpose for the joinder of the agency. 601 F.2d at 566.

Finally, DOE asserts that there is no case or controversy involving DOE in the private damage action by Marine against Champlin; that the participation of DOE in the district court proceedings cannot be characterized as voluntary; and that there is no basis pursuant to Rule 19(a), F.R.Civ.P. for the compulsory joinder of the DOE as an adversary party.

### Contentions of Champlin

Champlin contends that the *Dyke* case, *supra*, 601 F.2d 557 (Em.App.1979), did not preclude joinder of DOE as a formal party in all instances, but left to the "independent judgment and discretion of the district courts" the determination of the "extent, if any, of the DOE's participation in § 210 action...." Champlin argues that since the discretion of the district court was not in-

tended to be constrained by the decision in the *Dyke* case, and since the decision in the *Dyke* case was based upon the record of the district court proceedings, an evaluation of the merits of the joinder on an adequate record in the district court is necessary.

Champlin further contends that the participation of DOE in the district court proceedings in the private action was voluntary, and therefore, the *Dyke* case is inapplicable and DOE should remain a plenary party.

Finally, Champlin contends that the question whether regulations of DOE are unconstitutionally vague is in issue in this action; and that DOE should remain a party in an action in which a record is being made on the issue of constitutionality.

### Contentions of Marine

Marine contends that

summary reversal of the district court's order denying the dismissal of DOE should not be granted in a vacuum. Contrary to DOE's contentions, *Dyke* does not mandate such a result. *Dyke* did not hold that the DOE should never be a party to a § 210 action. *Dyke* instead recognized the need for a pragmatic approach to joinder of the agency. As alternatives to joinder, the Court specifically directed the district courts to consider application of the doctrines of exhaustion of administrative remedies and primary jurisdiction and the use of intervention, *amicus* appearance and non-party discovery. (Marine Response at page 7.)

### Decision That Summary Reversal of the Order of the District Court Should Not Be Granted

For the following reasons, we decide that the motion of the DOE for summary reversal of the order of the district court denying a judgment on the pleadings should be denied.

DOE purports to move, pursuant to Rule 33 of the general rules of this Court, for a summary reversal of that order of the district court.

■ Concerning summary reversal of a ruling of a district court, it was correctly concluded in *Vietnam Veterans Against the War v. Morton*, 506 F.2d 53, l.c. 56 n. 7 (D.C.Cir.1974) that:

Summary reversal is an extraordinary remedy for which the proponent has a "heavy burden of demonstrating both that his remedy is proper and that the merits of his claim so clearly warrant relief as to justify expeditious action. *United States v. Allen*, 408 F.2d 1287, 1288 (D.C.Cir.1969); *Natural Resources Defense Council, Inc. v. Morton*, 458 F.2d 827, 832 (D.C.Cir.1972).

In the same case it was properly held that to warrant summary reversal, a ruling of the district court must directly contravene a controlling rule of law or precedent of an appellate court. *See*, 506 F.2d at 55 n.6.

In that regard DOE contends that the decisions by the district court, challenged on this appeal, directly conflict with the decision of this Court in the *Dyke* case. We disagree.

■ The decision of the district court which is the subject of this appeal, and those decisions reviewed in the *Dyke* case, were based upon the same construction, by the district courts, of the decision in the *Longview* case, *supra*, 554 F.2d 1006 (Em. App.1977). The district court in this action did not have the benefit of the decision and opinion in the *Dyke* case, clarifying the opinion in the *Longview* case, at the time it denied the motion of DOE for judgment on the pleadings. The district court in this case has never ruled upon the propriety of joinder of DOE in a plenary role as an adversary party after consideration of the principles announced in the *Dyke* decision. Under these circumstances, we cannot say that the decision of the district court should be reversed summarily.

DOE argues, with some force, that the material facts in the present action and those in the *Dyke* case are identical, and that reversal of the district court's order would be proper. All were private damage actions in which no claims were asserted by

or against DOE. DOE further argues that joinder of DOE in this and the *Dyke* cases was based upon the same misconstruction of the *Longview* case.

However, since the order of the district court in this case was based upon the opinion of the *Longview* case, *supra*, 554 F.2d 1006,[4] neither Champlin nor Marine has ever had the opportunity to show "compelling circumstances" to justify the joinder of DOE within the meaning of the opinion in the *Dyke* case. *Cf.* 601 F.2d at 569.[5] There is no record on appeal of all the proceedings in the district court and no complete transcript of full proceedings on the material issues described in the opinion in the *Dyke* case, which we could examine to determine the propriety of the joinder of DOE as an adversary party in this action. Because the factual record is inadequate for us to determine whether joinder of DOE in a plenary role as an adversary party or in any other role was warranted, the motion of DOE for summary reversal is denied.

### C.

The final question we must decide is what action should now be taken on this appeal, after we have determined that appellate jurisdiction exists and have denied the motion for summary reversal.

#### Contention of DOE

As stated above, DOE contends that summary reversal by this Court of the order of the district court is appropriate.

#### Contentions of Champlin

Champlin in its brief states that if appellate jurisdiction exists:

---

4. The district court below was not the only one to read *Longview* as requiring the joinder of DOE. See the *Dyke* case, *supra*, 601 F.2d at 560 n.6.

 The opinion in the *Dyke* case comments extensively on the various constructions of the *Longview* case. See the *Dyke* case, *supra*, 601 F.2d at 563–64, where it is stated:

 *Longview* itself, although interpreted by the district courts and some of the parties here as promulgating a general and invariable rule of joinder, actually involved an *ad hoc* direction. The confusion of administrative action on closely related problems was emphasized. Far from purporting to lay down any general rule, much less mandating joinder of the agency in all section 210 cases, this court observed that

 [o]n remand, the district court should order the FEA, which has expertise and responsibility with respect to interpreting, applying, and enforcing the statutes and the pricing regulations in controversy, including corrective action for any unlawful price increase passed down the stream of commerce by a plaintiff, to be joined as a party to this litigation.

 554 F.2d at 1024.

 It is reading altogether too much into this statement to suggest that its description of the agency's powers indicated that those powers necessarily were to be exercised in purely private litigation, much less that the agency should be generally joined as a party to such litigation for that or any other purpose.

 Differences in the situations of those cases and the ones with which we are now confronted are manifest. There was then no indication that agency joinder would be interpreted as a general rule other than when courts were considering the mandating or invalidation of agency orders. There was the assumption that agency participation for the purposes stated would be willingly extended. There was no expressed or other expectation that the agency would be compelled to assume a plenary role as an adversary party. There was no suggestion that joinder might compromise or circumvent proper application of the doctrines of exhaustion of administrative remedies or primary jurisdiction or that any ongoing agency proceedings would be obstructed. There was no suggestion or consideration of alternatives for serving the expressed purpose of recourse to agency expertise. Possible consequences of collateral estoppel upon ongoing administrative proceedings did not appear. The directions for joinder were forthcoming after it had been determined on appeal that the prior proceedings in the lower courts were largely abortive. There was reason to believe that joinder would simplify and expedite, rather than complicate and delay, the termination of the cases in question.

 The issues and the related purposes of the litigants are now presented in an entirely different light.[12] Far from blindly applying, or reviewing those decisions upon the basis of considerations not there involved, we must look afresh at the contentions of the parties in the cases now before us.

 (Footnote 12 omitted.)

5. However, Champlin was allowed to participate in the appeal of the *Dyke* case as *amicus curiae.* See the *Dyke* case, *supra*, 601 F.2d at 561 n.7.

Then, under the teaching of the *Dyke* opinion, the order appealed from should be affirmed. At the very worst it should be remanded to the District Court for the purpose—in the words of the court—of exercising its "independent judgment and discretion" to determine whether the Secretary should be dismissed at all in the circumstances of this case, and, if so, whether he should be dismissed before complying with the [District] Court's existing orders for the completion of discovery. (Reply Brief of Champlin at page 19.)

### Contentions of Marine

Marine contends that, in the circumstances of this action and the related administrative compliance action by DOE in which the DOE administrative proceeding is appealed within DOE, the courts should defer to the agency until a final administrative decision is reached. Marine contends that "the doctrine of primary jurisdiction is clearly applicable" to this action, and that dismissal of DOE as an adversary party in a plenary role should be granted only in conjunction with a stay of the district court proceeding until the administrative compliance proceeding and its judicial review are completed. (Marine Response at pages 7, 11–13.)

### Conclusion That Jurisdiction Should Be Retained and That the Action Should Be Remanded to the District Court For Further Proceedings

This Court in the *Dyke* case acknowledged that the "admonition of the Congress to this Court with respect to expedition of adjudications emphasizes our duty to avoid if possible any wholesale commingling of agency procedures with private actions at the trial level which would foster delay both within the agency and in the courts." 601 F.2d at 565.

On the subject of propriety of joinder of DOE, and related issues presented to the district court in this case by the motion of DOE for judgment on the pleadings, the Court noted in the *Dyke* case that "objections to a general rule of joinder are impressive." 601 F.2d at 567. These objections include, among others described in the

opinion in the *Dyke* case, the possibility of estoppel, the possibility of cross claims and appeals on points collateral to the private litigation, the possibility of the improper use of discovery against the agency, and the possibility that "wholesale commingling of discrete administrative and judicial remedies in public and private actions likely would hinder, disrupt, and render torpid the statutory scheme for enforcement." 601 F.2d at 567. Although the opinion in the *Dyke* case recognized the "frequent helpfulness of agency expertise," it found that "a proper solution most often may be found in more appropriate alternatives." *Dyke* case, *supra*, 601, F.2d at 568.

In the opinion in the *Dyke* case this Court concluded that:

And it is our opinion over the objection of the agency it ordinarily may not be joined as a full-fledged party in section 210 actions, except in *Associated General Contractors* situations or under other compelling circumstances not shown here. Justification for joinder may be negated by failure of the district court to consider, and when appropriate to avail itself of, the possible alternatives of intervention, *amicus curiae* appearance, the principles of exhaustion of administrative remedies and primary jurisdiction, non-party discovery or other devices falling short of plenary joinder of the agency as a party. (601 F.2d at 569 with citations omitted here.)

The record on this appeal is not adequate for us to decide whether compelling circumstances exist which would justify joinder of DOE in this action. Neither is there a record of any consideration by the district court of the principles and possible alternatives to joinder enumerated in the opinion in the *Dyke* case, which had not been filed or published when the district court ordered joinder of DOE as a party and compelled discovery in this action.

Therefore, we remand this action to the district court to make an adequate record and to decide under the principles of the *Dyke* case, the propriety of joinder of DOE in this action, and the consequent discovery from DOE, its officers and employees. The

district court should consider each of the possible alternatives to joinder of the DOE as a plenary adversary party described in the *Dyke* case, *supra,* 601 F.2d at 569, and also consider whether there are any compelling circumstances in this action which warrant the joinder of DOE as a party in a plenary or other role.[6]

In the interest of judicial efficiency and early disposition of the difficult question

**6.** The complete analysis by this Court in the *Dyke* opinion on the issue of joinder of DOE in § 210 actions is available to the district court and to the parties at 601 F.2d 557 (TECA 1979). Particular attention is invited also to the following excerpts from that opinion:

### III

We cannot agree with Gulf, Owen, and the *amicus curiae* that the legislative history of the ESA supports the idea that in a private action under section 210 the administrative agency must or should be joined as an involuntary defendant. The scant record directly bearing upon the point suggests quite the contrary.[13] Express statutory references to agency intervention in different situations furnish additional support for the DOE's position.[14] The section 211(b) admonition of the Congress to this court with respect to expedition of adjudications emphasizes our duty to avoid if possible any wholesale commingling of agency procedures with private actions at the trial level which would foster delay both within the agency and in the courts. Moreover, practice in other regulated fields, where private actions traditionally have proceeded without involvement of the regulatory agencies as parties, could not have been lost upon Congress.[15]

(Footnote 13 is set out below. Footnotes 14 and 15 are omitted.)

[13] Aside from the legislative policy and structure implicit in the Act itself, which seems inhospitable to those appellees' interpretation, the only expression of pertinency is contained in a Senate report:

Section 210 provides a traditional method by which violators of regulations may be discovered and other would-be violators may be deterred. This can be accomplished by authorizing a person suffering a legal wrong to bring a treble damage action against a violator.

This action is intended to be brought by private persons against other private persons. The Government will not bring such action nor be the subject of one.

S.Rep.No.92–507, 92d Cong., 1st Sess. 2, *reprinted in* [1971] U.S.Code Cong. & Admin. News, pp. 2283, 2291.

601 F.2d at 564–65.

### V

Objections to a general rule of joinder of the DOE as a party in private litigation are impressive. The insistence in opposing briefs on having the Government bound by private judgments merely confirms for the DOE its concern about the impact of joinder in view of the possibilities of estoppel.[26] The problem of its possible cross claims and appeals on points that really might be collateral to the private litigation could further confound a hodgepodge. As a practical matter the timing and scope of enforcement would become subject to the vagaries of private litigation. Audits and investigations might not be allowed to run their normal courses,[27] and the agency's option to proceed administratively could be compromised. "The Government", the DOE points out, "would be forced to take positions and initiate actions often prematurely and without adequate resources, because of the accident of its entanglement in private litigation." DOE Reply Brief at 5. Any wholesale commingling of discrete administrative and judicial responsibilities in public and private actions likely would hinder, disrupt, and render torpid the statutory scheme for expedited enforcement. The commingling of private and agency enforcement devices for which Congress has made separate provision would represent a sharp departure from long standing separations in the antitrust and securities fields.[28] The implication of a general rule of joinder of the agency here, if widely accepted for purposes urged by appellees, could also have far ranging implications in other fields.

We are not unmindful from the viewpoints of both the court and private litigants of the frequent helpfulness of agency expertise, the frustrations of incomplete or delayed agency action and the convenience of access to the agency's views which the party status of the agency would provide in private actions. Yet a proper solution most often may be found in more appropriate alternatives.

### VI

Rule 24(b)[29] supplies specific method and criteria for agency participation in private enforcement actions. Except where the validity of an order of the agency is under attack, the situation for agency involvement in a private suit, indeed, the situation of these cases, could hardly be described more nicely when an agency elects to intercede than by the language of the intervention rule, as "[w]hen a party to an action relies for ground of claims or defense upon any statute or executive order administered by a federal ... agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive..."

That intervention in the situation described by the rule would be at the election of the agency, [30] does not warrant the making of joinder mandatory for no better reason than that intervention would serve some useful purpose. The

presented in this action, we shall retain jurisdiction of this appeal while the question of joinder of DOE and related questions are on limited remand for further proceedings consistent with this opinion. This action is supported by the following authorities: 16 Wright, Miller, Cooper & Grossman, *Federal Practice and Procedure* § 3937, at 272, 274 (1977 & Supp.1979), and cases cited therein, including: *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, l.c. 570 (2d Cir. 1968); *FDIC v. Grella*, 553 F.2d 258, l.c. 264 (2d Cir. 1977); *Kreda v. Bush*, 550 F.2d 888, l.c. 890 (3rd Cir. 1977); *United States v. Mars*, 553 F.2d 508, l.c. 508 (6th Cir. 1977); *United States v. LePatourel*, 571 F.2d 405, l.c. 410 (8th Cir. 1978), *modified*, 593 F.2d 827 (8th Cir. 1979). *See also, United States v. Librach*, 602 F.2d 165, l.c. 167 (8th Cir.

1979); *United States v. Grant*, No. 79–1483, slip op. at 2 (8th Cir., November 27, 1979); 16 Wright, Miller, Cooper & Grossman, *Federal Practice and Procedure, supra*, § 3937, at 275 (1977), in which it is stated:

> Despite its novelty, it is highly desirable to recognize the power to retain jurisdiction after the issues of an appeal have been decided, in order to ensure prompt review of further proceedings required in the wake of the appeal.... The need for prompt subsequent review is most likely to arise in cases involving new and complex questions.... The power to retain jurisdiction in such circumstances is desirable, and it seems likely that it could be exercised profitably in more cases than present opinions reflect.

salutary rule of deference of courts to agency decisions [31] should not be distorted to become a rule of unreasonable judicial dependence upon agency joinder in private cases generally.

In the doctrines of exhaustion of administrative remedies and primary jurisdiction also may be found solutions for which joinder of the agency in private litigation may be found to be only an ineffective and complicating counterfeit. The respective doctrines, though essentially different in applicability, are closely related.[32] As an alternative to the involuntary joinder of the DOE as a party to private litigation, the applicability of one or the other of them must be considered by the district court.

Related is the need for clarification of agency positions with reference to existing orders or regulations.[33] The statute provides for agency interpretations, apart from judicial proceedings,[34] and appropriate means have been provided by agency regulations for corresponding interpretations and orders subject to direct review by the district court.[35]

Only recently this court has taken occasion to commend in another connection the avoidance of action which "if allowed, would unnecessarily frustrate the agency's investigative and, ultimately, compliance enforcement efforts", and the "speedy resolution of cases brought under the [ESA]", citing *Bray v. United States*, 423 U.S. 73, 74, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975).[36] Agency joinder in these cases likely would promote neither purpose.

### CONCLUSION

We thus hold on the issue certified by the district courts that the DOE was not required to be joined as a party by reason of our prior decisions. And it is our opinion over the objection of the agency it ordinarily may not be joined as a full-fledged party in section 210 actions, except in *Associated General Contrac-*

tors situations [37] or under other compelling circumstances not shown here.[38] Justification for joinder may be negated by failure of the district court to consider, and when more appropriate to avail itself of, the possible alternative of intervention, *amicus curiae* appearance, the principles of exhaustion of administrative remedies and primary jurisdiction, non-party discovery or other devices falling short of plenary joinder of the agency as a party.[39]

Although we recognize, as we did in our prior decisions, that Rule 19(a) joinders involve flexible considerations and reasonable discretion, the circumstance here reminds us that justification must be found not only within theoretical boundaries and the immediate utility of the rule but in the purposes, necessities, likely effects and other pragmatic considerations on balance. (Footnote 39 is set out below. Footnotes 26 through 38 are omitted.)

[39] What has been said is not intended to constrain the independent judgment and discretion of the trial courts but rather to repair apparent misapprehension of our prior decisions. We do not believe it possible, nor do we undertake to lay down any "bright line rule" for other cases or for further proceedings upon remand of these cases. With due regard for the considerations indicated, the district courts should determine the extent, if any, of the DOE's participation in § 210 actions in avoidance of undue delay or prejudice to the original parties and unjustified impairment of agency functions and in the promotion of "the interest of the courts and the public in complete, consistent and efficient settlement of controversies." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111, 88 S.Ct. 733, 739, 19 L.Ed.2d 936 (1968), *supra*.
601 F.2d at 567–70.

Following the precedent of the authorities cited above, we will direct the district court on limited remand to make an adequate record and to decide anew the motion of DOE to dismiss and other related motions that may be filed. The district court shall then certify the record of its proceedings and actions on remand to this Court. We request that the district court proceed as promptly as reasonably possible. Subject to this limited remand, we retain jurisdiction of this appeal.

To further enhance judicial efficiency and to facilitate early disposition of this appeal, the district court should be limited to consideration of the questions presented in this appeal, and described in the *Dyke* case. We therefore shall order that the order staying discovery from DOE entered by Chief Judge Tamm of this Court shall remain in effect until further order of this Court. No other proceedings in the private action of Marine versus Champlin are stayed.

## IV.

### Orders On Remand

For the foregoing reasons, it is

ORDERED that the Motion for Reconsideration of the Motion of Champlin to Dismiss the Appeal of DOE be, and it is hereby, granted. It is further

ORDERED that upon reconsideration by the panel, the Motion of Champlin to Dismiss the Appeal of DOE for lack of subject matter jurisdiction be, and it is hereby, denied. It is further

ORDERED that the Motion of DOE for Summary Reversal of the order of the district court denying judgment on the pleadings, be, and it is hereby, denied for the reasons stated in this opinion. It is further

ORDERED that jurisdiction of this appeal be, and it is hereby, retained until further action by this Court. It is further

ORDERED that the action against DOE be, and it is hereby, remanded to the district court for the limited purposes only of 1) making an adequate record on the questions presented; 2) deciding the claims of DOE that it by summary judgment or otherwise, be dismissed as a party, or relieved of discovery, or other pretrial or trial obligations; and 3) making decisions and entering further orders consistent with this opinion. It is further hereby

ORDERED that the order of Chief Judge Tamm of March 9, 1979, granting the motion of the DOE for a stay of discovery from DOE, shall continue in effect until further order of this Court, provided that this shall not be construed to prohibit any further proceedings, actions and orders in the pretrial and trial of the private action by Marine against Champlin, which do not affect DOE.

BONSAL, Judge, concurring and dissenting:

I concur that Champlin's motion to dismiss the appeal of DOE for lack of subject matter jurisdiction should be denied for the reasons stated in the majority opinion. However, I would not retain jurisdiction in TECA but would remand the case to the district court to reconsider its holding denying DOE's motion that it be dismissed as a party, in light of *Dyke v. Gulf Oil Corp.*, 601 F.2d 557 (Em.App.1979), decided subsequent to the district court's order.

# UNITED STATES COURT OF APPEALS

### Fifth Circuit

### UNIT B

---

## DECISIONS WITHOUT PUBLISHED OPINIONS

The following cases have been decided without formal opinion prepared for publication in the permanent law reports:

| Title | Docket Number | Date of Decision | Disposition | Appeal from and Citation (if reported) |
|---|---|---|---|---|
| * Rowland v. Schweiker | 80–5666 | 9/ 2/81 | AFFIRMED | S.D.Fla. |
| * Goulden v. Davis | 80–9042 | 9/ 2/81 | AFFIRMED | S.D.Ala. |
| * Cain v. Smith | 81–7138 | 9/ 2/81 | AFFIRMED | N.D.Ga. |
| * U. S. v. Smith | 80–5620 | 9/ 4/81 | AFFIRMED | S.D.Fla. |
| Aldersgate Foundation, Inc., Matter of | 80–5697 | 9/ 4/81 | AFFIRMED | M.D.Fla. |
| McCallum v. City of Macon, Ga. | 80–7354, 80–7629 | 9/ 4/81 | AFFIRMED IN PART; REVERSED IN PART AND REMANDED | M.D.Ga. |
| U. S. A. v. McCoy | 80–7395 | 9/ 4/81 | AFFIRMED | N.D.Ga. |
| Sunnyland Refining Co., Inc. v. N. L. R. B. | 80–7795 | 9/ 4/81 | PETITION DENIED; ORDER ENFORCED | N.L.R.B. |
| * Denaburg v. Post Welding Supply Co., Inc. | 80–9037 | 9/ 4/81 | AFFIRMED IN PART; REVERSED IN PART AND REMANDED | N.D.Ala. |
| * Watson v. Busbee | 81–7204 | 9/ 4/81 | AFFIRMED | N.D.Ga. |
| Hollowell v. Jove | 78–2479 | 9/10/81 | REMANDED | N.D.Ga. |
| * Meggett v. Wainwright | 80–5436 | 9/10/81 | AFFIRMED | S.D.Fla. |
| * Compania v. Parts Express International | 80–5526 | 9/10/81 | AFFIRMED | S.D.Fla. |
| * Parts Express International v. Yale Industrial Trucks– Gulf/Atlantic | 80–5526 | 9/10/81 | AFFIRMED | S.D.Fla. |
| * U. S. v. Castro | 80–5603 | 9/10/81 | AFFIRMED | N.D.Fla. |
| † U. S. v. Adler | 80–5733 | 9/10/81 | AFFIRMED | S.D.Fla. |
| * U. S. v. Sanchez | 80–5766 | 9/10/81 | AFFIRMED | S.D.Fla. |
| † Boire v. SAS Ambulance Service, Inc. | 80–5911 | 9/10/81 | AFFIRMED | M.D.Fla. |
| Tenn-Tom Towing, Inc. v. Inland Towing Co. | 80–7622 | 9/10/81 | AFFIRMED | S.D.Ala. |

* Fed.R.App.P. 34(a); 5th Cir.R. 18.
† Local Rule 21 case.

## DECISIONS WITHOUT PUBLISHED OPINIONS—Continued

| Title | Docket Number | Date of Decision | Disposition | Appeal from and Citation (if reported) |
|---|---|---|---|---|
| * Joseph v. Huguley & Son Coal Co., Inc. | 80–7722 | 9/10/81 | AFFIRMED | N.D.Ala. |
| * Minton v. Secretary of Health & Human Services | 80–7984 | 9/10/81 | REVERSED AND REMANDED | S.D.Ga. |
| *† Firsten v. Weiss | 80–9027 | 9/10/81 | AFFIRMED | N.D.Ga. |
| * Blevins v. State of Alabama | 80–9056 | 9/10/81 | AFFIRMED | N.D.Ala. |
| * Stephens v. Lowery | 80–9061 | 9/10/81 | AFFIRMED | N.D.Ga. |
| * Butler v. Harrington | 81–5042 | 9/10/81 | AFFIRMED | M.D.Fla. |
| U. S. v. Richie | 81–7049 | 9/10/81 | AFFIRMED | N.D.Ala. |

* Fed.R.App.P. 34(a); 5th Cir.R. 18.
† Local Rule 21 case.

# UNITED STATES COURT OF APPEALS

### Fifth Circuit

### UNIT B

### DENIALS OF REHEARING EN BANC

(Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12)

Group 1—Denials where no member of the panel nor Judge in regular active service on the Court requested that the Court be polled on rehearing en banc.

Group 2—Denials after a poll requested by a member of the panel or a Circuit Judge in regular active service.

Group 3—Denials on the Court's own motion after a poll requested by a member of the panel or a Circuit Judge in regular active service.

| Title | Docket Number | Date of Denial | Citation of Panel Decision |
|---|---|---|---|
| GROUP 1 | | | |
| Chatham Ventures, Inc. v. Federal Deposit Insurance Corp. | 80–7599 | 9/11/81 | S.D.Ga., 651 F.2d 355 |
| Huffman v. Wainwright | 80–5237 | 9/ 9/81 | M.D.Fla., 651 F.2d 347 |
| Meason v. Popular Bank and Trust Co., Ltd. | 79–3106 | 9/ 9/81 | S.D.Fla., 654 F.2d 722 |
| U. S. v. Harrison | 80–7416 | 9/11/81 | N.D.Ga., 651 F.2d 353 |
| U. S. v. White | 80–7949 | 9/11/81 | N.D.Ga., 651 F.2d 777 |
| Whitfield v. Termplan, Inc. | 80–7249 | 9/11/81 | N.D.Ga., 651 F.2d 383 |
| GROUP 2 | | | |
| Fenner v. General Motors Corp. | 79–2518 | 9/ 9/81 | M.D.Fla., 657 F.2d 647 |